MICHAEL O'DONNELL

*v.*

· THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 22, 1906.*

1. CRIMINAL LAW—*recital in record that grand jury were "duly sworn" is sufficient.* A recital in the record that "the grand jurors aforesaid were duly sworn and charged by the court," is a sufficient showing that they were sworn by the form of oath prescribed by the statute, and it is not necessary that the record show the particular form of oath that was administered.

2. SAME—*doctrine of idem sonans applied.* Spelling the surname of the prosecuting witness as "Dorgan" in one part of an indictment and as "Durgan" in another part is not, under the doctrine of *idem sonans,* ground for quashing the indictment.

3. SAME—*what is not former jeopardy.* Plea of former jeopardy cannot be based upon the fact that a trial of the defendant had been previously begun under another indictment, which was *nolle prossed* by the State's attorney after four jurors were selected and sworn.

4. SAME—*when return of new indictment does not make a new case.* Where a criminal case is reached in its regular order on the docket and a trial is begun but the indictment is *nolle prossed,* the fact that a new indictment is returned by the grand jury on the same day is not ground for continuance, where there is no showing that the defendant is surprised or that any additional proof is necessary to the defense than would have been required under the first indictment.

5. SAME—*failure to specifically object to parol proof of convictions of witness is a waiver.* Convictions of a witness, in a criminal case, of various crimes should be proved by the record of such convictions and not by parol; but if the defendant's objection to parol proof is general, and not upon the ground that the records should be produced to prove the facts, the question is waived and the admission of the parol proof is not reversible error.

6. ROBBERY—*goods need not be actually taken "from the person" of another.* Robbery, within the meaning of the statute, may be committed by violence or putting in fear, and feloniously taking money or other thing of value from the person or in his presence and under the immediate control of the person assaulted.

7. SAME—*what is sufficient intent to rob.* One who goes to a building with an intent to burglarize the same, and upon finding a watchman in charge makes an assault upon him, which is repelled,

may be convicted of an assault with intent to rob the watchman, even though there is no proof of an intent to take money or goods from his person.

8. SAME—*when instruction, though erroneous, will not reverse.* An instruction in a trial for assault with intent to rob, holding that the jury might infer the particular intent charged if they believed the assault was committed deliberately and was such as was likely to be attended with dangerous consequences, while erroneous and inapplicable to the facts will not reverse, where the only defense of the accused is an *alibi,* and where the evidence shows the assault was made with intent to plunder the building of which the person assaulted was in charge.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

Plaintiff in error was jointly indicted with John E. Mulholland, by the grand jury of Cook county, for an assault with an intent to rob Joseph E. Dorgan. Mulholland entered a plea of guilty, and subsequently, on the trial of plaintiff in error, he was a witness and testified for the People. The case against plaintiff in error was regularly reached for trial on the 20th day of June, 1906, and the trial was commenced, and after four jurors had been selected and sworn the assistant State's attorney in charge of the case, discovering some informality in the indictment, entered a *nolle prosequi.* On the same day the evidence was presented to the grand jury, which was then in session, and another indictment was returned charging the same offense. A motion to quash the indictment was made and overruled, after which a special plea was presented by plaintiff in error setting up the proceeding under the first indictment as a bar, the contention being that plaintiff in error had once been put in jeopardy for this offense. The court sustained a demurrer to this plea. Plaintiff in error then moved for a continuance on the ground that the last indictment returned against him constituted a new case, and that it should not be tried until all cases standing ahead of it on the calendar were disposed of. This motion the court overruled, and a trial was had

resulting in the conviction and sentence of plaintiff in error to the penitentiary for an indeterminate term, in accordance with the verdict.

The evidence on behalf of the People shows that about 12:15 o'clock on the morning of March 21, 1906, Mulholland, a man who is known by the name of "Curley," and plaintiff in error, went to the ticket office of the Western Indiana railroad elevated station at Forty-seventh street and Western Indiana tracks. They had previously planned a raid on this station with the intention of blowing a safe therein and stealing its contents. The evidence shows that plaintiff in error had located the safe some time before this and that he was the chief conspirator in the criminal enterprise. Upon arriving at the station plaintiff in error and "Curley" advanced to the door of the station, leaving Mulholland about twenty paces away as a watch. The prosecuting witness, Joseph E. Dorgan, was a watchman and was inside the station, and when plaintiff in error and his confederate approached the door Dorgan opened the door, and one of the men inquired about the Wabash train. Dorgan positively identified plaintiff in error as the person who inquired of him concerning the train. One of the men then jumped into the waiting room and grabbed Dorgan and a struggle ensued, in which two or three shots were fired, and one of the assaulting party called out, "Come on, John." Dorgan succeeded in getting a pistol in the office and the parties were frightened away, running north and west into the Wabash yards. Mulholland ran toward Forty-fifth street and was arrested by officer Birmingham about three minutes after the shots were fired. Plaintiff in error was arrested about an hour later at Root and Halsted streets by officer Fogarty. At the time plaintiff in error was arrested the officer found a revolver on his person which was loaded, except one chamber, which held an empty shell which smelled strongly of powder when the officer drew out the empty shell. Plaintiff in error was taken to the police station and

Dorgan came there about three o'clock in the morning and identified him as one of the parties who had been at the station and assaulted him some three hours before.

On behalf of plaintiff in error two witnesses testify that they were with plaintiff in error from 7:30 o'clock in the evening all of the time until a few minutes before he was arrested. These witnesses also testify that during that evening plaintiff in error found a pistol in a toilet room, and which was examined so critically by the witnesses that they were able to testify that it had one empty cartridge in it. There was also some evidence introduced, furnished by prisoners who had been in jail with Mulholland, tending to show that he had made certain statements to the effect that he was to be discharged if he would testify implicating plaintiff in error. These statements were, however, denied by Mulholland.

JULIUS LIMBACH, and LIMBACH & LEDBETTER, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (WILLIAM A. RITTENHOUSE, and F. L. BARNETT, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

1. Error is assigned upon the overruling of the motion to quash the indictment. The point is made that the record does not affirmatively show that the grand jury that returned the indictment were sworn by the form of oath prescribed by the statute. The recital in the record upon this question is, that "the grand jurors aforesaid were duly sworn and charged by the court and thereupon retired to consider their presentments." The word "duly" has acquired a fixed legal meaning, and when used before any word implying action it means that the act was done properly, regularly and according to law. It is often used before such words as

"convened," "arrested," "qualified," "served," "presented," "discharged," and many others, and has in such cases the meaning of the word "legally" or "properly," "according to law." (See 10 Am. & Eng. Ency. of Law,—2d ed.— p. 315, and cases there cited.) The recital that the jurors were duly sworn is all that the law requires. It is not necessary that the record should show the particular form of oath that was administered.

It is next insisted that the indictment should have been quashed, for the reason that the name of the prosecuting witness is stated to be Joseph E. Dorgan in one part of the indictment and Joseph E. Durgan in another. In our opinion this objection is answered by the rule of *idem sonans.* Under this rule absolute accuracy is not essential in the spelling of names in legal documents or proceedings, either civil or criminal. The rule is stated to be, that if the name, when pronounced, conveys practically the same sound as the correct name as correctly pronounced, the misspelling of the name is not a variance and no advantage can be taken of the clerical error. There was no error in overruling the motion to quash the indictment.

2. It is next urged that the court erred in sustaining the demurrer to the plea of former jeopardy. This contention is based on the facts set out in the special plea, which showed that the trial was entered upon and that four jurors were sworn to try the cause, and that the indictment was thereupon *nolle prossed* by the State's attorney. No authority has been submitted, and it is believed that none can be found, holding that this proceeding amounted to a putting of plaintiff in error in jeopardy, within the meaning of the constitutional provision on that subject. The trial and jeopardy begin when the accused has been arraigned and the jury empaneled and sworn. (May on Crim. Law, sec. 117.) Even after the jury has been sworn, the trial completed and the cause submitted to the jury, if for good cause, such as failure to agree, sickness of a juror or the expiration of the

term of court, the judge should discharge the jury without a verdict, the prisoner could not plead a former jeopardy to a second trial for such offense. (May on Crim. Law, sec. 118; *State v. Vaughan*, 29 Iowa, 286; *State v. Woodson*, 50 Ind. 487; *Simmons v. United States*, 142 U. S. 148.) The demurrer to the plea was properly sustained.

3. It is next urged that the court erroneously refused to continue the case after the return of the second indictment, and that the trial of the case on this indictment was trying the case out of its regular order. The case had been reached in regular order and stood for trial when it was called, and the fact that the prosecuting attorney deemed it advisable to procure a more specific charge in the indictment on the same facts which were relied on for a conviction under the former indictment does not make this a new case. The new indictment was properly substituted for the defective one, and since no showing was made that additional proof was thereby made necessary, or that plaintiff in error was otherwise taken by surprise by the return of this second indictment, he was properly put upon trial under it. In our opinion this proceeding should be governed largely by the rules applicable to amendments. While an indictment is not amendable by the State's attorney, yet the same thing is accomplished when a new indictment is returned to obviate defects in a previous one. There was no cause shown in the affidavit filed in this case justifying the court in continuing the case, and the motion for that purpose was properly overruled.

4. The next assignment of error questions the ruling of the trial court upon the admission of evidence. The record shows that counsel for plaintiff in error made an unnecessarily large number of objections, most of which were general, no reason being suggested why they were interposed. All the evidence objected to was proper except that relating to the conviction of McCann of a number of felonies, which was proven by parol.

Under the decisions of this court in *Bartholomew* v. *People,* 104 Ill. 601, *Matzenbaugh* v. *People,* 194 id. 108, and *McKevitt* v. *People,* 208 id. 460, the admission of parol evidence to show these several convictions is clearly erroneous, and the materiality of the evidence given by the witness McCann is such that we would feel compelled to reverse for the error had the objections below specifically pointed out the grounds for its exclusion. From the objections made it appears that in none of them was it suggested that they were based on the ground that parol evidence was inadmissible to prove these convictions. If counsel for plaintiff in error had interposed this specific objection it is fair to presume the court would have sustained it, and the prosecution could have offered the record, if it was available. While the accused had the right to insist that only competent evidence should be introduced against him, yet he may waive the right, and does waive it by a failure to interpose in apt time proper objections. This question is settled by the decision of this court in *Simons* v. *People,* 150 Ill. 66, where it is said (p. 74) : "It is clear that the prosecution had no right to prove by parol that the defendant was convicted of an infamous offense, but the evidence was not objected to on the ground that the fact could not be proved by parol. It was not suggested to the court that the fact of conviction could only be proved by an authenticated copy of the record. Had the objection been made on this ground, doubtless the court would have excluded the evidence. The general objection made by the defendant was not sufficient."

5. It is earnestly contended on behalf of plaintiff in error that there was no evidence sufficient to go to the jury upon the specific intent charged in this indictment. The argument of plaintiff in error is, that the intent with which the alleged assault was committed was not, forcibly and by intimidation, to steal from the person of Joseph E. Dorgan, and that, even though the evidence is sufficient to show, beyond a reasonable doubt, that the assault was committed with an intent

to burglarize the station building or to steal from the safe therein, such proof will not sustain a conviction for an assault to rob Joseph.E. Dorgan.   Plaintiff in error contended, and asked the court to instruct the jury, that in order to convict the defendant of the crime of assault with·intent to rob, the jury must believe, beyond every reasonable doubt, that the assault was committed with the specific intent and for the purpose of robbing said Dorgan of his goods and chattels then and there *being on his person.*   The court below overruled a motion to direct a verdict, and also refused instruction No. 25, which presented the theory of plaintiff in error on this point.

Robbery, at common law, is defined to be "the felonious and violent taking of any money or goods from the person of another, putting him in fear, be the value thereof above or under one shilling."   (1 Hale's P. C. 532.)   Another definition is.: "A felonious taking of money or goods, to any value, from the person of another or in his presence, against his will, by violence or putting him in fear." (2 East's P. C. 707.)   It is said, to constitute robbery the taking must be from the person of another, and theoretically this is true.   (*Stegar* v. *State,* 39 Ga. 583;. *People* v. *Beck,* 21 Cal. 385;  *State* v. *Leighton,* 56 Iowa, 595.) · But the taking *from the person* is not understood to mean that the goods are actually on the person, in a strict sense.   At common law, if property was taken feloniously, with force and violence or by putting in fear, in the *presence* of the owner, it was, in legal contemplation, a taking from his person. (1 Hale's P. C. 532; *Rex* v. *Francis,* 2 Strange, 1015; *State* v. *Calhoun,* 72 Iowa, 432; *Clements* v. *State,* 84 Ga. 660; *Crawford* v. *State,* 90 id. 701; *Turner* v. *State,* 1 Ohio St. 422; *Hill* v. *State,* 42 Neb. 503; *Croker* v. *State,* 47 Ala. 53; *Houston* v. *Commonwealth,* 87 Va. 257.)   It is not necessary that the taking should be immediately from the person, so there be violence to his person or putting him in fear and a taking in his presence.   Where train robbers

224—15

drove an express messenger out of his car and then blew open the safe and took the money therefrom it was held robbery. (*State* v. *Kennedy,* 154 Mo. 268; 55 S. W. Rep. 293.) In *Clements* v. *State, supra,* it was held that when a person was in his smoke-house, fifteen steps away from his dwelling, and the property in his dwelling was in his immediate possession and control, and he was prevented from leaving the smoke-house by threats or intimidation until the dwelling was entered and the property stolen therefrom, the offense was robbery. In *State* v. *Calhoun, supra,* the accused entered the dwelling house of a lady and by threats and violence extorted information from her as to her valuables, and then leaving her tied in one room went into another and took her watch and money. This was held to constitute robbery, being a taking in her presence. This offense is defined by our statute as follows: "Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation." (1 Starr & Cur. Stat. p. 1345.) The above definition, without any change, is found in our statutes of 1845. (Rev. Stat. 1845, p. 160.)

It is a familiar rule of construction that when a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and will be so construed unless it clearly appears that it was not so intended. (2 Sutherland on Stat. Const. sec. 398; *Kirchoff* v. *Union Mutual Life Ins. Co.* 128 Ill. 199; *Meadowcroft* v. *Winnebago County,* 181 id. 504.) It will never be presumed that the legislature intended to make an innovation upon the common law further than the necessity of the case required, and the best rule of construction is to construe a statute as close to the reason of the common law as may be consistent with the terms employed. The words *"from the person of another,"* found in our statutory definition of robbery, must be held to have been used in the same sense and with the same meaning that these terms had ac-

quired at common law at the time the statute was enacted, and the offense of robbery, under our statute, may be committed by violence or putting in fear, and feloniously taking money or other thing of value from the person or in the presence and under the immediate control and possession of the person assaulted. There is nothing in our statute that shows that the term *"from the person"* was used in the restricted and popular sense contended for by plaintiff in error. Joseph E. Dorgan, being a watchman and in immediate charge and possession of the station and all the personal property therein contained, as against the plaintiff in error was the owner and in the possession of such property. If plaintiff in error and his confederates entered into a conspiracy to go into said station house and feloniously steal money or other valuable property therein, and if, upon arriving at said station house, they found the watchman there in charge of the property which they intended to steal, and if he was violently assaulted, for the purpose of overcoming his resistance or of putting him in fear, by the plaintiff in error with the intent to enable the conspirators to steal the money or other valuable thing then being in the possession and control of the said Dorgan, and were only intercepted and prevented from accomplishing their purpose by the resistance of the said Dorgan, the offense would be an assault with intent to rob the said Dorgan, and would be complete without proof of a specific intent to steal money or goods that were actually *on the person* of the said Dorgan. The evidence in this record is amply sufficient to warrant the jury in believing all of the facts assumed above, consequently the court properly overruled the motion of plaintiff in error to direct a verdict of acquittal, and instruction No. 25 was properly refused, since it was liable to mislead the jury as to what constituted a taking from the person. While the instruction is technically accurate as a general proposition of law, yet as applied to the facts of this case it was liable to mislead the jury and was properly refused.

6. Plaintiff in error complains that the court erred in giving instruction No. 3. This instruction is not free from serious objection; and if the case were close on the facts respecting the point covered by this instruction we would be required to hold it prejudicial error. The instruction told the jury that they might infer the particular intent charged if they believed, beyond a reasonable doubt, the assault was committed deliberately and was such as was likely to be attended with dangerous consequences. In this respect the instruction was wholly inapplicable to the case being tried. The deliberation with which the assault was made, or that it was likely to be attended with dangerous consequences, could not throw any light on the specific intent charged in this indictment. It would be otherwise if the charge was one involving malice aforethought, such as an assault to murder. The giving of this instruction, however, is harmless error. There can be no possible doubt as to the intent with which the alleged assault was made. The whole evidence conclusively shows that the intent and purpose was to plunder this station and steal the money in the safe, and other goods that might be there. There is no claim that any of the parties had any other object in view. The only claim of plaintiff in error is that he was not present and took no part in this offense. His defense rests entirely on an *alibi,* which the jury have, very properly we believe, refused to credit. The instruction in question, erroneous and inapplicable to the facts as it is, affords no just reason for reversing the judgment.

The proof is clear, and beyond a reasonable doubt substantial justice has been done, and there is no error requiring the judgment to be reversed. It should be, and is accordingly, affirmed.

*Judgment affirmed.*