(No. 19950.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS BRAVERMAN, Plaintiff in Error.

*Opinion filed October 25, 1930.*

Louis Greenberg, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and Joel C. Fitch, (Edward E. Wilson, John Holman, and Harold M. Keele, of counsel,) for the People.

Mr. Justice DeYoung delivered the opinion of the court:

Louis Braverman, Philip Schlein and Meyer Gordon were indicted in the criminal court of Cook county for the crime of robbery committed while armed with a dangerous weapon. Braverman was granted a separate trial. A jury found him guilty and he was sentenced to the penitentiary. He prosecutes this writ of error for a review of the record.

On November 15, 1927, at about 8:15 A. M., three men entered the drug store of the Walgreen Company at the northwest corner of Roosevelt road and St. Louis avenue, in the city of Chicago. Ida Ghingold, the cashier, was in her cage at the front of the store engaged in making out a report when her attention was attracted to a man who stood in front of the cage facing her. She asked him what he wished and he answered, "This is a stick-up." Not knowing what he meant she made a second inquiry, and he answered as before and pointed a revolver through the bars of the cage. Upon his command she raised her hands. The porter stood on the opposite side of the room and his hands too were raised. Another of the three men came from the rear of the room and commanded Miss Ghingold to lower her hands because he said he did not want persons outside the store to discover that a robbery was being committed. He asked her to open the safe, but she told him she did not know the combination. He then directed her to step

to the rear of the room where the third of the three men, also armed with a revolver, guarded the porter, a milkman and a customer. The receipts of the store were put in small brown bags marked with the letters "A" "B" "D" and "E," according to the clerk or employee who made the sale, and these bags were kept in the safe. The manager of the store, Michael Glickman, was forced to open the safe, and the robbers then locked all the persons present, including the manager, in a small room. After the robbers left, the attention of a man outside the store was attracted and the persons in the room were released. They found the contents of the safe as well as bottles and boxes strewn about the floor and $371 in money had been taken.

On the morning of November 15, 1927, John Cunningham, a driver for the Checker Taxicab Company, received a call to go to the Rosette Hotel at 2845 Washington boulevard. He drove to the hotel and in a few minutes two men, whom he later identified as the plaintiff in error and Gordon, came out of the hotel, entered his cab and asked to be driven to Roosevelt road and St. Louis avenue. As the car approached this destination, it was stopped alongside another Checker taxicab, and Cunningham's passengers entered the second car in which a man and a woman were seated. These four persons then transferred to the first cab and Cunningham was directed to drive down various streets until he reached a point on St. Louis avenue a short distance north of Roosevelt road when he was asked to stop. The three men left the cab, one of them stating that they would return shortly, and they walked toward the Walgreen Company's drug store. In a short time they returned in great haste and as they entered the cab, one of the men closed the door so forcibly that the glass in the door was broken. Cunningham was urged repeatedly to drive at a high rate of speed because he was told his passengers desired to board a railway train. Under the direction of one of the men, a circuitous route was followed

until a point just south of Washington boulevard on Francisco avenue was reached. Here the passengers left the taxicab and the plaintiff in error gave Cunningham five dollars and inquired whether that sum was satisfactory. Cunningham answered that it was about sufficient to pay the fares and defray the cost of the broken glass. The three men proceeded north and thence east and Cunningham saw them enter the Rosette Hotel. He then notified the police department. A police squad responded and Cunningham directed them to the hotel.

Garrett Fleming, a sergeant of police, arrived at the drug store shortly after the robbery had been committed. Accompanied by another police officer he proceeded to the Rosette Hotel. After talking with the clerk he caused a search to be made of the hotel. The plaintiff in error emerged from room 208, and in answer to questions by the officers, said he had called to meet a friend and was on his way to the criminal court building to attend a trial. The officers knocked on the door of that room, but received no response. Sergeant Fleming obtained the key, opened the door and found Meyer Gordon sitting on the bed. Gordon and the plaintiff in error were taken to the lobby of the hotel, and Floyd Carr, who was employed in the drug store that had been robbed, was asked whether any person present had been in the store that morning. Upon the information he gave the officers, the plaintiff in error and Gordon were taken back to room 208 and searches of their persons and of the room were made. In one of the pockets of the plaintiff in error, paper money amounting to $286 was discovered and a dresser drawer disclosed a cap containing one hundred eighty-nine pennies as well as a brown cloth bag with the letter "E" upon it. A revolver loaded with five shells was found in a black valise on the floor. Although the plaintiff in error denied guilt, he and Gordon, the money and the revolver were taken to the Fillmore street police station. Other police officers brought Schlein and his wife to

the same station. Later on the same day, these four persons were confronted by Miss Ghingold, the cashier, and Cunningham, the taxicab driver. Miss Ghingold identified the plaintiff in error and Schlein as two of the men who participated in the robbery, and believed that Gordon was the third man. Cunningham identified the plaintiff in error, Gordon, Schlein and Schlein's wife as the occupants of his taxicab on the morning of the robbery.

The defense rests upon the testimony of the plaintiff in error, his mother and his sister. The sister testified that when she left for work at 7:15 o'clock on the morning in question, the plaintiff in error was at home eating breakfast. The mother said that, on the same morning, he left home at about 7:30 o'clock with $300 which she had given him to pay her deceased husband's funeral bill. The testimony of the plaintiff in error is that he left home at the time stated by his mother with $11 in addition to the money she had given him; that his mother directed him to take the $300 to his uncle to reimburse the latter for money he had advanced to pay the funeral expenses of the witness' father who had died on August 26 of the same year; that it was a Jewish custom to utter a prayer each morning and evening for a year after the death of a member of the family; that he went to the synagogue at Fifteenth street and Clifton Park avenue for that purpose and remained there until about 8:45 A. M.; that he then proceeded to the Rosette Hotel where he expected to meet Sam Simon, a friend, and go with him to the criminal court to attend the trial of a case; that upon reaching the hotel he went to room 208, knocked on the door and when it was opened, asked for Sam Simon; that the occupant answered that Simon was not there, whereupon the witness asked to be admitted, but the request was denied because the occupant said he was sick and did not want to be disturbed; that, as the witness was leaving, he was stopped by two police officers who asked his name, address and destination and then searched

his pockets; that the money on his person was not discovered at the time but was found later, and that the police officers put a cap on him, twisted his arm, and beat and kicked him. The plaintiff in error denied participating in the robbery, riding in any taxicab or giving Cunningham, the taxicab driver, five dollars.

The charges of physical cruelty made by the plaintiff in error were specifically denied by the police officers. At the time of the trial, Glickman and Carr were no longer in the service of the Walgreen Company and neither they, nor the milkman who was present when the robbery was committed, could be found.

Several contentions for the reversal of the judgment are made by the plaintiff in error. The first is that the indictment charges that one Michael Glickman was put in bodily fear and danger of his life and that $371, the property of the Walgreen Company, a corporation, in his care, custody and control, was taken from the person of Glickman against his will by force and intimidation and that there was no proof to support these allegations of the indictment.

Robbery, as defined by the statute, is the felonious and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation. The indictment was in the language of the statute, and it is argued that to constitute robbery the taking of the money must have been from the person of Glickman. The words "taking from the person of another," as used in the common law definition of robbery, were not restricted in their application to those cases in which the property stolen was in actual contact with the person of the one from whom it was taken, but included within their meaning the taking, by force or intimidation from the presence of the person assaulted, of property which either belonged to him or was under his personal control and protection. (1 Hale's P. C. 532; *O'Donnell* v. *People*, 224 Ill. 218). Nor was it neces-

sary that the property should be in the actual or immediate presence of the owner or custodian. The requirement was that the property should be in the possession or under the control of the individual robbed in such a way or to such an extent that violence or putting in fear was the means used by the robber to take it. Where the words "taking from the person of another" have been incorporated into a statute defining robbery, they have received the same construction as at common law. (*O'Donnell* v. *People, supra;* 23 R. C. L. 1142.) The evidence showed that the property was violently taken by force and intimidation from the presence, as well as the control, of the custodian Glickman, and hence proof of the crime of robbery under the statute was complete. *O'Donnell* v. *People, supra; People* v. *Carpenter,* 315 Ill. 87; *People* v. *Funk,* 325 id. 57.

The argument that the evidence fails to show that Glickman was put in bodily fear and danger of his life is likewise without merit. At least two of the robbers had revolvers; they compelled Glickman to open the safe, and he was forced into the small room with the other occupants of the store. Disobedience of their command would have endangered his life, and obviously he did not submit voluntarily to the perpetration of the crime.

The prosecution's witnesses in their testimony referred to Glickman rather than Michael Glickman as the manager of the drug store, and it is argued that there was, for that reason, a variance between the proof and the pertinent allegation of the indictment. The trial proceeded upon the theory that the Glickman named by the witnesses and the Michael Glickman mentioned in the indictment were one and the same person. No objection on the ground of a variance was made upon the trial, and the plaintiff in error is not now in a position to avail himself of that objection. Even if the claim of a variance had been urged in the trial court it would not have served the plaintiff in error. A variance with respect to the names alleged in an indictment

and proved by the evidence is not regarded as material unless it is of such a substantial character as to mislead the accused person in preparing his defense or unless it may place him in jeopardy a second time for the same offense. (*People* v. *Weisman,* 296 Ill. 156; *People* v. *Callahan,* 324 id. 101; *People* v. *Boneau,* 327 id. 194) There is no theory upon which a variance of such a character can be established in this case.

It is further contended that the court admitted hearsay testimony which was highly prejudicial to the plaintiff in error. On the direct examination of Miss Ghingold, the assistant State's attorney inquired what, if anything, was said at the police station. She answered that the question there asked her was whether she recognized the plaintiff in error. Her answer was made in his presence, it was in the affirmative, and he remained silent. The testimony was admissible. *People* v. *Dean,* 308 Ill. 74.

Complaint is made that the trial judge expressed his opinion upon controverted questions of fact in the presence of the jury. Upon the cross-examination of officer Fleming, counsel for the plaintiff in error asked, "And Gordon, on examination and investigation by you, was later discharged?" An objection was interposed by the prosecution and the judge inquired how the question was material. Counsel for the plaintiff in error answered that it concerned the matter of identification. The judge's question was repeated and counsel then stated that his question affected the credibility of the witness. The judge replied that the jury would have to hear the evidence on which Gordon was discharged. An exception was taken to the judge's statement and the judge then added: "Whether he was discharged is not material in this case. If you can bring witnesses to prove all this identity was mistaken. Their judgment is not binding upon this court," and an exception by counsel for the plaintiff in error followed. Owing undoubtedly to some omission by the court reporter the judge's statement

is not complete. The whole discussion, however, had reference to a hearing in which Gordon alone was concerned. The inference to be drawn from the judge's statement is that the event of such a hearing had no relevancy to any issue in the instant case in which the guilt or innocence of the plaintiff in error, and of no other person, was to be determined. The judge's statement was not a ruling upon the credibility of witnesses, nor did it constitute an expression of opinion concerning the facts in the case. The statement was justified.

It is objected that another statement made by the trial judge was prejudicial to the plaintiff in error. On the cross-examination of Charles L. Rogers, chief investigator for the Walgreen Company, he was asked by counsel for the plaintiff in error whether the company's records disclosed that it had caused the prosecution of Floyd Carr for larceny. In sustaining an objection to the question the judge said, "It is absolutely improper and the purpose of it is obviously improper. This man is being tried for robbery. Nobody else is being tried for any other offense in this court room. You cannot put anybody else on trial." The ruling was correct and the criticism was sound and the plaintiff in error can derive no advantage from the improper question propounded by his counsel.

Complaint is made of an instruction given to the jury at the request of the prosecution. The jury were informed by the instruction that their conclusion concerning the guilt or innocence of the defendant would not necessarily be determined by the number of witnesses testifying to any fact or state of facts; that in determining whether the defendant was guilty, as charged in the indictment, they might take into consideration the number of witnesses testifying in support of and against any fact or state of facts and, to the extent shown by the evidence, the opportunities of the several witnesses for hearing or knowing the things about which they testified; their conduct or demeanor while tes-

tifying; their age, discretion and experience; their bias or lack of bias; their interest, if any, in the result of the trial and the probability or improbability of the truth of their several statements in view of all the evidence, facts and circumstances proved on the trial, and that the jury might, from all these facts and circumstances and a full consideration of all the evidence, determine whether the defendant was innocent or guilty as charged. The only criticism made upon the instruction is that it did not require proof of guilt beyond a reasonable doubt. The instruction set forth certain rules of general application; it was not an instruction upon particular facts, nor did it direct a verdict upon evidence recited, and the subject of reasonable doubt was foreign to its purpose. Other instructions informed the jury that the guilt of the plaintiff in error was required to be established by proof beyond a reasonable doubt. The instructions should be considered together as a whole, and a particular instruction need not set forth all the rules of law governing the case. *People* v. *Hadfield,* 337 Ill. 462; *People* v. *Hicketts,* 324 id. 170.

The contention is finally made that an instruction upon circumstantial evidence requested by the plaintiff in error was improperly refused. The instruction assumed that a conviction was sought solely upon circumstantial evidence. The assumption was erroneous. Ida Ghingold was an eye witness to the robbery and positively identified the plaintiff in error as one of the participants. Her evidence was not circumstantial but direct. The instruction was misleading as it was drawn, and it was properly refused. *People* v. *Dear,* 286 Ill. 142.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*