(No. 20532.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM STELLA, Plaintiff in Error.

*Opinion filed June 18, 1931.*

FRANK A. McDONNELL, (S. B. McDONNELL, JR., of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, JAMES B. SEARCY, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. Justice Farmer delivered the opinion of the court:

Sam Stella, Nick Matteio and Dan Pontarelli were indicted at the October term, 1929, of the criminal court of Cook county for the robbery, while armed with a gun, on September 13, 1929, of Martin VanHorn of a truck loaded with eggs and poultry. The three defendants were tried by a jury and found guilty. Motions for a new trial and in arrest of judgment were overruled and judgment rendered on the verdict. Matteio and Pontarelli were sentenced to the reformatory at Pontiac and Stella to the penitentiary at Joliet. Stella alone has sued out this writ of error to review the record.

The errors assigned and argued in the brief of plaintiff in error are, that the court admitted incompetent evidence and erred in refusing an instruction offered by defendants.

On behalf of the People, Leonard Stalkent testified that he lived in Zealand, Michigan, and was a produce dealer, buying and selling poultry and eggs, some of which he sold and delivered by truck to his Chicago customers. He sent a truck-load to the N. Zimmerman Company, one of his customers at Chicago, on September 12, 1929, the truck leaving Zealand, Michigan, about 5:30 P. M. The value of the truck was about $3200 and the value of its load was about $2800. It was in charge of and driven by a man named VanHorn, who had previously made many such trips for his employer. VanHorn testified he arrived at the Zimmerman Company's place, at Fulton and Curtis streets, in Chicago, about 3:30 in the morning, September 13, 1929. The building was closed, and he backed up to the curb at the place of unloading, shut off his motor, put the keys in his pocket and went to sleep in the seat on the truck. He was awakened shortly after 3:30 A. M. by two men, one on each side of the truck. They ordered him off of the truck, told him he was being held up, and Stella, plaintiff in error, came around on the right side of the truck and searched him. Stella was armed with a gun when he

searched him, and Matteio, who was on the right side of the truck, also had a gun. Stella took VanHorn's pocketbook and truck keys and gave the truck keys to Matteio. The pocketbook contained five dollars which belonged to VanHorn. Matteio started the truck and the other two men directed VanHorn to.go to a Chrysler roadster which was parked on the corner, about twenty-five feet away. While going to the Chrysler car Stella struck VanHorn on the head with a pistol. Pontarelli, one of the defendants, was in the driver's seat of the Chrysler roadster. They ordered VanHorn to get in the Chrysler car, which he did, and he sat between Pontarelli and Stella. The Chrysler car was driven about a half a block and stopped alongside a Chevrolet coupe. Stella got out of the Chrysler to talk to someone in the Chevrolet coupe. Then the two cars started up, following the truck. After going a few blocks the Chrysler turned off and left the Chevrolet and the truck, and after driving some distance the Chrysler was stopped in an alley near a two-stall garage. The three men went in the garage, and VanHorn testified Stella and Pontarelli made him get down on the floor and then bound his hands and feet, gagged him and left him there. VanHorn finally released himself, went to a filling station and telephoned for the police, who responded to the call. VanHorn telephoned his employer, Stalkent, early that morning, advising him of the robbery of the latter's truck and produce. The employer arrived in Chicago that afternoon and assisted in the further investigation of the robbery. The truck was found next day in Chicago but the load of produce had been removed. The Chicago police arrested Matteio on September 13, 1929, and Pontarelli and Stella on September 24. On September 25 VanHorn and his employer were present at a "show up" at the detective bureau in Chicago, at which time VanHorn, in the presence of several police officers and his employer, identified and picked Stella from a group of six men as being one of the men who robbed him. The

same evening he identified and picked Pontarelli from another group of about ten men, and after midnight of the same night, at the Bridewell Hospital, he identified Matteio as being the third robber. Matteio was then in bed in the hospital on account of bullet wounds in his legs received during his arrest. All of the defendants denied having had anything to do with the robbery and each offered the testimony of a number of witnesses to establish an alibi.

It is claimed that the court admitted improper evidence. After the defendants were arrested by police officers, Van-Horn, the victim of the robbery, went to the detective bureau in Chicago and there from a number of men picked out Stella and Pontarelli and identified them as two of the men who robbed him. He also identified the third man, Matteio, who was then confined in the hospital. The court admitted the testimony of one or two police officers and of Stalkent relative to the identification of the men by Van-Horn. It is claimed that was hearsay testimony, was offered merely to bolster up the proof of identification, and was incompetent. VanHorn picked two of the defendants and identified them from a number of men. He did it in their hearing and presence, and plaintiff in error said nothing except to take a good look and be sure. We do not think the court erred in the admission of that testimony. (*People* v. *Braverman,* 340 Ill. 525; *People* v. *O'Donnell,* 315 id. 568.) Plaintiff in error relies on *People* v. *Lukoszus,* 242 Ill. 101, and *People* v. *Krejewski,* 332 id. 120, but in those cases the identification testified to by third parties was not made in the presence or hearing of the defendant.

Complaint is made of the cross-examination of Pontarelli, who is not a party to this writ of error. He testified on direct examination that he never stole anything in his life and had never stolen a pair of pants. This was brought out by his own counsel on direct examination, and the State's attorney was permitted to interrogate him about the truth of his statement that he never stole anything in his life.

The court permitted a rather lengthy cross-examination, but stated to the jury four or five times that the testimony was incompetent as to the other defendants and to disregard it. Pontarelli is not here complaining, and as the court limited his examination to his own case and instructed the jury to disregard it as to the other two defendants we do not think Stella could have been injured by it. The jury are supposed to be composed of men of average intelligence, and it is presumed they would not consider evidence against plaintiff in error when specifically instructed not to do so. *Crosby* v. *People,* 137 Ill. 325.

Complaint is made of the refusal of the court to give defendants' instruction No. 2, which reads as follows:

"The court instructs the jury that the question of fact, together with other questions of fact, is the question of identification, which was relied upon in part by the State and denied by the defendants. If you believe from all the testimony in this case that under the stress and excitement of the acts complained of by the State's witnesses, they are such as would raise in your mind a reasonable doubt as to the truth or exactness of the identification by the State's witnesses, it is your duty to give the defendants the benefit of such doubt and return a verdict of not guilty."

The instruction is rather unskillfully and confusedly drawn and would not have aided the jury in its deliberations had it been given, and is open to the objection that it is argumentative and assumes facts to be determined by the jury.

Plaintiff in error offered proof of several witnesses to the effect that he was at home at the time the robbery was committed. These alibi witnesses were the sisters and brothers of plaintiff in error, and it was a question for the jury to decide as to what weight should be given to that evidence. The jury apparently disregarded it entirely, and we cannot say they were not authorized to do so. The identification made by VanHorn was positive and the plain-

tiff in error, who heard it, said nothing to the contrary. The proof we think was quite sufficient to establish the guilt of plaintiff in error and no reversible error was committed on the trial.

The judgment will therefore be affirmed.

*Judgment affirmed.*

Subsequently, upon petition for rehearing, the following additional opinion was filed:

Mr. JUSTICE ORR delivered the opinion of the court:

At a former term of this court an opinion affirming the judgment in this case was delivered by Mr. Justice Farmer. A rehearing was allowed. Upon further consideration of the case the opinion formerly filed is re-adopted and is re-filed.

The points raised in the petition for rehearing are chiefly the same as those considered in the original brief and argument of plaintiff in error, all of which have been passed upon in the opinion. The identification of Stella was positively made by the witness VanHorn. His detailed description of Stella and all the surrounding circumstances of the hold-up was complete. He described the kind of clothing Stella wore, his size and general appearance. He had excellent chances of observation, as Stella, after robbing him of his money and keys, marched him from the truck over to a Chrysler roadster parked directly under a street light. Stella then ordered Pontarelli, the driver of the Chrysler, to drive down the street. After going a short distance they stopped alongside of a Chevrolet automobile, where Stella got out and talked with someone in the Chevrolet for several minutes. While this was going on VanHorn noticed the license number on the Chevrolet, which he later gave to the police officers. It was this information which enabled the police to begin a search which led to the arrest of the three robbers. Stella then got back in the Chrysler roadster and they drove for several minutes over the streets

of Chicago. During this ride VanHorn again observed the appearance of the gangsters, as he was sitting in the middle of the seat, with Stella on one side and Pontarelli on the other. They then drove into an alley, where VanHorn was taken out, bound, gagged and left in a garage. While he was being gagged he had further opportunity to look at Stella. VanHorn identified Stella, Pontarelli and Mattieo at different times and places without hesitation or doubt. His identification of Pontarelli and Mattieo was not seriously questioned even though his opportunities to observe them were much less than as to Stella. As a result of information furnished to the police they located the Chrysler car which Pontarelli and Stella had used during the robbery, and after the investigation started Pontarelli went to the police station and gave himself up. These incidents surely tend to show that the jury were fully justified in believing VanHorn's unshaken testimony identifying Stella as one of the robbers.

This court has frequently held that the question of identity goes only to the weight of the evidence. It is the province of the jury to determine the weight of the evidence, and the fact that but one eye-witness to a crime may testify is not, of itself, sufficient to set aside a verdict of guilty. (*People* v. *Fisher,* 303 Ill. 594.) Such testimony was held sufficient even though the identification by one witness for the State was not positive. (*People* v. *Maciejewski,* 294 Ill. 390.) The weight to be given to testimony of identification is a question for the jury. (*People* v. *Jennings,* 252 Ill. 534.) In the present case VanHorn picked Stella out at the second police "show-up" from a group of other suspects. At the time he was sitting within ten feet of the stage. He afterwards again pointed out Stella in the back room, at which time Stella told him "to take a good look and be sure." VanHorn had already taken several good looks at Stella and was sure of his identity and neither then nor later expressed any doubt concerning the

matter. No particular significance should be attached to Stella's expression at the time he was again identified in the back room, as such statement is purely self-serving.

The case of *People* v. *Lukoszus*, 242 Ill. 101, is chiefly relied upon by plaintiff in error in an attempt to show that reversible error was committed in allowing a police officer to testify concerning a conversation with VanHorn in the presence of the accused. The facts in the *Lukoszus case* bear scant resemblance to those in the case at bar. In the case cited the story of the only witness who identified the accused was contradicted in several important respects and needed corroboration if it were to be believed. This corroboration was attempted by a police officer who testified that he had secured his description of the accused from a third party. Such testimony amounted to the same thing as permitting one witness to testify that the other witness told him the defendant was the man. In the present case the identification of Stella by VanHorn was positive and uncontradicted and needed no corroboration from any source. The record here shows that the only testimony of the police officer to which objections of plaintiff in error, when made, were not sustained, consisted of a one-sentence answer: "VanHorn said Sam Stella was one of the men." The record further shows that this statement of VanHorn occurred in the presence of and within ten feet of the accused and that the accused then said nothing. After first pointing out Stella on the stage at the police "show-up," VanHorn made his identification complete by then going into the back room and there again pointing him out in Stella's presence, sight and hearing. Under these circumstances the evidence of the identification was proper. *People* v. *Braverman*, 340 Ill. 525; *People* v. *O'Donnell*, 315 id. 568; *People* v. *Dean*, 308 id. 74.

No error was made by the trial court in refusing defendants' instruction No. 2, as it was argumentative and so carelessly drawn that it might have confused the jury,

and its subject matter was sufficiently covered in two other instructions given. One of the instructions given at the request of defendants told the jury that the burden was on the prosecution to prove not only that the crime alleged was committed but that the defendants were present at the time and engaged in committing it; also by instruction No. 4 given for the State the court told the jury that if they had a reasonable doubt from the evidence as to whether the defendants were present at the place and time of the commission of the crime they should find the defendants not guilty. These two instructions concern the identity, as well as the whereabouts, of the accused, but even if they had not been given, the trial judge was under no duty to revise, amend or correct an instruction which is both unintelligible and argumentative. (*People* v. *Lopez,* 296 Ill. 438; *People* v. *Andrews,* 327 id. 162.) No error is shown which would warrant this court in setting aside the verdict of the jury by reversing the judgment in this case.