(No. 13887.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AUGUST BOETCHER, Plaintiff in Error.

*Opinion filed June 22, 1921—Rehearing denied October 7, 1921.*

1. CRIMINAL LAW—*conviction may be sustained on testimony of prosecuting witness.* The mere fact that only one witness testifies against the defendant, which testimony is denied by the defendant, is not ground for setting aside a verdict of conviction; and in a prosecution for taking indecent liberties with a child the defendant may be convicted on the testimony of the prosecutrix, especially where there is other evidence by the officers who arrested him, and by another witness whose testimony the defendant does not deny, tending to incriminate him.

2. SAME—*when defendant waives objection to testimony as to complaint made by prosecuting witness.* A judgment of conviction cannot be reversed for incompetent testimony introduced by the State by the silent permission of the defendant, and in a prosecution for taking indecent liberties with a child, objection to the testimony of the prosecutrix as to the complaint she made to her parents cannot be raised on review in the Supreme Court where no objection was raised to the testimony when it was offered and given.

3. SAME—*what testimony is hearsay in prosecution for taking indecent liberties with child.* In a prosecution for taking indecent liberties with a child, testimony of the defendant as to what the mother of the prosecutrix said about her intention to get money out of him is hearsay and is incompetent except to discredit the mother's testimony if she is called to testify, and evidence of a

statement made by her in the presence of the prosecutrix, to the effect that the defendant had done nothing wrong, is not admissible except to impeach the testimony of the prosecutrix in case her attention is called to the statement when she testifies.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

W. B. O'BRIEN, GEORGE F. RUTLEDGE, and PATRICK T. HARRINGTON, (JOSEPH T. HARRINGTON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and HENRY T. CHACE, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

August Boetcher, plaintiff in error, was tried and convicted in the criminal court of Cook county on the charge of unlawfully and feloniously taking immoral, improper and indecent liberties with a certain female child, Mary Niedermeier, then and there being under the age of sixteen years, with the intent of arousing, appealing to and gratifying the lust, passions and sexual desires of plaintiff in error, then and there being a male person of the age of seventeen years and upward. The court sentenced him upon the verdict to the penitentiary at Joliet for a term of years not exceeding the maximum fixed by the statute, after overruling a motion for a new trial and in arrest of judgment. He prosecutes error for a review of the judgment.

The principal facts upon which plaintiff in error was convicted were testified to by the prosecuting witness, Mary Niedermeier, and are the following: She lives in Cook county, at Park Ridge, is of the age of ten years, has gone to school three years and is a fifth grade pupil. Plaintiff in error lives about a half mile from her father's house on

a farm with his mother and sister-in-law. On a Saturday evening in September, 1919, she went to the Boetcher home, as was her custom, to get milk. She got her milk and a little cat which Mrs. Boetcher gave her. While she was on her way home with the milk, with the cat in a basket, she met the plaintiff in error in his automobile a little ways from his home, near the orchard. He stopped his machine, crossed a ditch between her and him and said, "Oh! I thought you were someone else; where are you going?" She replied that she was going home. He asked her if she would get into the machine with him and then took her and put her in the machine, she telling him that she did not want to go. He then drove into the garage or a little shed near his house, put his lights out, placed the milk and the kitten in the back seat of the machine and took her on his lap, with her back against his chest, while he sat in the seat in front of the steering wheel. He held her on his lap about fifteen minutes and put his hands under her dress. She then described minutely other things that he did to her which are not deemed proper matter to be recited in this opinion, as it is not questioned that they constituted indecent liberties with her, as charged. She told him she wanted to go home, and he replied, "That's all right; there is time for that." He then asked her if she did not want to go into the pig barn with him. Answering no, he then asked her if she did not want to go up-stairs in the house with him, to which she also replied no. He finally let her out of the machine and she went home and told her mother and father what had occurred between her and the plaintiff in error. She fixed the time of his dealings with her at eight o'clock, or just about dark. On her cross-examination she answered that she knew what it meant to tell the truth, and that if she swore something that was not the truth she would tell a lie and have to go to jail for it and be punished by God.

The State proved by the two officers who arrested plaintiff in error on October 7, 1919, at his home, that they went

to his house about ten o'clock in the evening. They did not find him at first and were informed by his mother that he and the hired man were out getting up the stock that was in the woods, as a bull had torn down the fence and let out the stock. The officers waited a reasonable time and not seeing any of the stock went to the barn, which had the doors all closed and locked. The bull and the cows were lying down within the barn. They went back to the house and searched it, first going into the basement, then through the first floor, then to the second floor, and finally, at about one o'clock A. M., went into the attic, where they found the plaintiff in error lying between two joists, with an old buggy-top turned over him. The attic was up next to the roof and was a very close, dark place, which they entered by a ladder made of boards nailed to the wall and leading through a hole eighteen by twenty inches that had been made in the ceiling of the room below the attic. There was no light in the attic when the officers went into it, according to their testimony, and plaintiff in error refused to answer the officers, who called him a number of times by his name before going into the attic.

Albert Boetcher testified for the State that plaintiff in error, his brother, was thirty-nine years old, and that he asked him a short time after the alleged offense if it was true that he had had any dealings with the girl and that he answered neither yes nor no.

The testimony given by plaintiff in error and his witnesses, his mother, Mrs. O'Halleron, Mrs. Bassett and Edward Bassett, was in the nature of an alibi, and was, in substance, that on the evening of September 27, 1919, he ate supper at Mrs. Bassett's, stayed there until eight o'clock or nine o'clock, left in his automobile with Edward Bassett, who rode with him as far as Jefferson street, and that he arrived home about 9:45 and drove his machine into the garage or wagon shed and was only in the garage a very short time,—not more than a minute. The testimony of the

witnesses who saw him drive into the garage is simply to the effect that it was dark and that if he had the girl with him they did not see her, and that he came right out of the garage and up to the house. Plaintiff in error's only reference in his testimony to the girl's statement as to what he did to her was that she told an untruth when she said that he had her on his lap, and that he did not see her on September 27, 1919. His and his mother's testimony is contradicted in a very material matter by the officers as to when he was arrested, he and his mother testifying that he was in the attic with a lantern, "sorting things out for the auction." It appears that he was in the habit of doing work and putting up notices for auction sales. Two witnesses testified to his good reputation for chastity and morality. Five witnesses for the State testified that his reputation in those particulars was bad.

The claim of plaintiff in error's counsel that the evidence is insufficient to support the verdict of the jury can not be sustained. The evidence, which has already been stated in substance, is itself a sufficient answer on that proposition. This court has frequently held that the fact that only one witness testifies against a defendant, which testimony is denied by the defendant, furnishes no sufficient grounds for setting aside a verdict of conviction. (*People* v. *Zurek,* 277 Ill. 621; *People* v. *Schoop,* 288 id. 44.) In the present case all the damaging evidence against plaintiff in error was not furnished by the prosecutrix. His testimony was contradicted in very material matters by the two officers who arrested him. Very damaging testimony against him was given by his brother and was not denied by him at all.

Plaintiff in error's assignment of error that the testimony of the prosecutrix to the effect that when she got home she made complaint to her father and mother and told them what the plaintiff in error did to her was incompetent is well founded, but there was absolutely no objection

raised to the testimony when it was offered and given. In the absence of any objection or exception by the plaintiff in error, the question must be considered as not legally presented for review. The court's judgment cannot be reversed for incompetent testimony introduced by the State by the silent permission of the plaintiff in error. It is not the business of the court to raise objections and to preserve exceptions, but simply to pass upon the competency of testimony when there is a proper objection made to it.

Plaintiff in error offered to prove by his mother's testimony that on September 29, 1919, the mother of the prosecutrix stated at her home, in the presence of the prosecutrix, that there had been no attack on her and that nothing wrong had been done. He also offered to prove a similar statement was made by Mrs. Niedermeier, in the presence of the prosecutrix, to plaintiff in error. Plaintiff in error further offered to prove that on the night he was arrested he went to Niedermeier's house and asked him and his wife why he was arrested, and that Mrs. Niedermeier said, "How much did you make on the auction?" that he replied to her, "$1500; what is that to you?" that she replied, "Well, you pay me $1500 or you will spend fifteen years in jail;" that he then said, "I won't pay you a damn cent and won't spend one minute in jail, because I didn't attack or touch your little girl; I wasn't there, and you know it, and you have told mother so." Mrs. Niedermeier was not a witness in the case. Her remark to the plaintiff in error about the money was absolutely incompetent, as hearsay testimony. Had she testified it would have been admissible to show her bad motive and to discredit her testimony. For a like reason it was incompetent to show that Mrs. Niedermeier tried to borrow money from plaintiff in error or his mother. The remarks made in the presence of the prosecutrix were only competent as evidence to impeach her testimony had her attention been properly called to the statements when she was testifying. Plaintiff in error's counsel failed to make any

inquiry of the prosecutrix about the matter in her examination and the court properly ruled the evidence incompetent.

Plaintiff in error's other grounds of complaint we find to be unfounded. There were no remarks, either by the court or by counsel for the State, that had any undue tendency to prejudice him in his trial. In the giving of instructions the court was fair to him. If there are any errors therein they are in his favor. The court instructed the jury upon all questions that were properly in the case and refused no instructions of plaintiff in error that were proper to be given to the jury, except some that were covered by other instructions in the case. The court refused some instructions that ought not to have been given because argumentative or otherwise objectionable.

There is no reversible error in the record. The judgment of the criminal court is affirmed.

*Judgment affirmed.*