(No. 17429.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN FILIPAK *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1926.*

1. CRIMINAL LAW—*robbery defined.* Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation.

2. SAME—*when corporate existence of owner of property taken in robbery need not be proved.* An allegation in an indictment for robbery that the property taken was in the care and custody of the person robbed, supported by proof, is sufficient to sustain a conviction although the person assaulted did not own the property, and in such case proof of the corporate existence of a corporation alleged to be the owner of the property is not necessary.

3. SAME—*when currency found upon accused is admissible to prove robbery.* In a prosecution for robbery, where the prosecuting witness testifies that besides other currency he was robbed of a ten-dollar gold certificate, a bill of such denomination found in the shoe of the accused at the time of his arrest, after he denied having any other money except that found in his pockets, is admissible in evidence although not positively identified as the same bill which was taken from the prosecuting witness.

4. SAME—*when co-defendant's alleged offer of settlement is not admissible against him.* In a prosecution of two defendants for

robbery, testimony of the prosecuting witness that one of the defendants told him the other would pay him a certain sum of money if he failed to identify them upon the trial is not admissible against the co-defendant alleged to have made the offer where he was not present when the statement testified to was made to the prosecuting witness.

5. Same—*what hostile conduct of trial judge will warrant reversal.* In a prosecution for robbery the conduct of the trial judge in ordering the incarceration of the prosecuting witness and multiplying the bail of the defendants in the presence of the jury merely because the witness refused to identify the defendants as the parties who robbed him is highly prejudicial and will warrant a reversal of a conviction, where, under the competent evidence in the record, it cannot be said that a verdict of guilty must have been returned regardless of such prejudicial conduct.

6. Same—*trial court should not indicate, by word or conduct, opinion as to the facts in the case.* The trial judge has the right to ask questions of witnesses or call other witnesses to the stand in order to ascertain the facts and elicit the truth concerning questions at issue; but as the accused is entitled to a fair and impartial trial by a jury, it is not the province of the judge, in a criminal case, to express by word or indicate by conduct in the jury's hearing any opinion upon the facts.

Writ of Error to the Criminal Court of Cook county; the Hon. Harry B. Miller, Judge, presiding.

Cecelia M. Skrentny, (Eugene L. McGarry, of counsel,) for plaintiffs in error.

Oscar E. Carlstrom, Attorney General, Robert E. Crowe, State's Attorney, and James B. Searcy, (Edward E. Wilson, and Henry T. Chace, Jr., of counsel,) for the People.

Mr. Justice DeYoung delivered the opinion of the court:

Joseph Filipak and James Wojcik were indicted at the June, 1925, term of the criminal court of Cook county for robbery while armed with a pistol. A jury found them guilty. Motions for a new trial and in arrest of judgment

were overruled and they were sentenced to the penitentiary. They prosecute this writ of error for a review of the record.

At about 2 A. M. on May 30, 1925, Amos J. Brolet, a chauffeur for the Yellow Cab Company, was driving one of its taxicabs in the vicinity of Forty-second place and Kedzie avenue, in the city of Chicago. Two men hailed him, and one of them asked him to drive to 3142 Forty-second place. Brolet stopped and the men rode on the running-boards of the cab, one on each side, to the number designated. When they arrived there Brolet felt what he thought was a man's fist or a pistol pressed against his ribs and he was ordered to put up his hands. The two men took a ten-dollar gold bill or certificate and ten one-dollar bills from Brolet and directed him to proceed to Albany avenue, the next street east of Kedzie avenue, and thence to Archer avenue, southeasterly about half a block. Before reaching Archer avenue the men had alighted from the cab and Brolet returned to Kedzie avenue, where he saw a police officer. He requested the officer to assist him in finding the robbers, but the police officer declined to do so because he said the offense was not committed in his district. Brolet then proceeded to the Brighton Park police station, about a mile distant, and reported the robbery. The sergeant at the station assigned two police officers in a patrol wagon, accompanied by Brolet, to search for the robbers. They soon discovered two men, whom they stopped, but upon close inspection Brolet declared that they were not the men who had robbed him. A little later Filipak and Wojcik were seen on Kedzie avenue, at Forty-first place, and Brolet identified them as the robbers. They denied their guilt and when searched no weapon was found in their possession. They were taken to the police station and again searched. Wojcik had seven dollars in one-dollar bills and twenty-five cents in small change. Filipak had a five-dollar bill and five one-dollar bills in his pockets and a ten-dollar gold certificate in his

shoe. The police officer's initials were marked on this bill and it was offered in evidence.

On the trial in the criminal court Brolet testified that he was not certain that Filipak and Wojcik had robbed him although he had identified them as the robbers at the time of their arrest. On cross-examination he admitted that on the preliminary hearing in the municipal court he had said that he was not absolutely positive that they had robbed him. The trial judge then inquired of Brolet why he once positively identified Filipak and Wojcik as the robbers but was unable to do so upon the trial. Brolet answered he might have made a mistake; that the hold-up occurred so quickly and that he did not wish to convict innocent men. After further interrogation by the assistant State's attorney the judge and counsel retired to the court's chambers, out of the hearing of the jury. The assistant State's attorney said that in view of the evidence he did not see how a conviction could be obtained and suggested that a *nolle prosequi* be entered. The judge answered that he could not permit a witness to come into his court and change his testimony after having positively identified the accused persons, and that he would hold Brolet to the grand jury and have him taken into custody. The trial judge and counsel then returned to the court room and the presence of the jury. Brolet was excused from the witness stand and by the court's order remained in the custody of a bailiff. The two police officers who had arrested Filipak and Wojcik then testified to Brolet's identification of the defendants, the circumstances of their arrest and the finding of money in their possession. Upon the conclusion of the officers' testimony the State rested. The defendants moved that they be discharged because the allegations of the indictment had not been proved. The court overruled the motion. Filipak was then sworn as a witness, Brolet and the defendants were taken into custody, the bail of the defendants was raised from $3000 to $15,000, and the jury retired for the day.

Brolet was confined in the county jail over night.  At the opening of court on the following morning he resumed the witness stand over the objection of the defendants.  He testified that he desired to correct his testimony of the previous day; that Filipak and Wojcik were the men who robbed him; that after he testified before the grand jury some person called him on the telephone, stating that he was connected with the Yellow Cab Company, and requested Brolet to call upon him; that he, Brolet, was unable to go at the time and was called again, and in response to the second telephone message went to No. 8 East Twenty-second street, in Chicago; that he met Filipak there, who told him that he, Filipak, was intoxicated at the time of the hold-up and did not know what he was doing; that his relatives were poor; that he would like to settle the matter out of court; that he would give Brolet $300 immediately after the trial if he failed to appear; that later Filipak told him his appearance could be enforced by subpœna; that several conferences followed, as the result of which it was suggested that on the trial Brolet should not identify the defendants; that he, Brolet, told Filipak that he would accept the offer of $300 and fail to identify the defendants in court, and that Filipak said Wojcik would pay the money.  On cross-examination Brolet testified that he was at the time confined in the county jail; that at the preliminary hearing in the municipal court he had testified that he was not certain that the defendants were the men who had robbed him; that he appeared at that hearing long before he went to Filipak, and that he called on the defendants' counsel but did not inform him that Filipak had offered him $300.

Filipak and Wojcik lived in adjoining houses near the scene of the robbery.  Filipak was twenty-six years of age and his occupation was the repair of automobiles.  Wojcik was twenty-five years old and had been employed by commission houses on South Water street, in Chicago, for up-

wards of three and one-half years. Both denied any knowledge of or participation in the offense charged. They testified that they had visited two soft drink parlors on the night in question and were on their way home when arrested. Filipak admitted that he had a ten-dollar bill in his shoe, but said that he carried it there as a precaution, because he had been robbed. He testified that after the indictment Brolet called upon him twice at his place of employment and assured him that he, Brolet, did not want to prosecute him and would not identify him and that he need not worry. Filipak denied that he ever requested Brolet not to testify, or, in case he testified, to say that he could not identify him. He denied that he ever offered Brolet any money. Wojcik was not present at any conversation between Filipak and Brolet. Filipak further testified that shortly after his arrest one of the police officers at the station beat him so that his face became discolored. The accused officer denied the charge, and the sergeant at the station testified that if Filipak had been beaten he would have discovered it, and that he saw no marks on Filipak's face. Wojcik's foreman testified that his reputation for honesty was good.

It is first contended by the plaintiffs in error that it was not shown that the Yellow Cab Company, whose money was taken, was a corporation. Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation. (Criminal Code, par. 501; *People* v. *Nolan,* 250 Ill. 351; *Schroeder* v. *People,* 196 id. 211; *Howard* v. *People,* 193 id. 615; *Burke* v. *People,* 148 id. 70.) An allegation in an indictment for robbery that the property taken was in the care and custody of the person robbed, supported by proof, is sufficient to sustain a conviction for robbery though the person assaulted did not own the property. (*People* v. *Knox,* 302 Ill. 471; *People* v. *Rogers,* 303 id. 578; *Burke* v. *People, supra.*) The indictment in the in-

stant case charges that the money feloniously taken from the person of Brolet by force was "then and there in the care, custody and control of the said Amos J. Brolet." The evidence supported this allegation. Proof of the corporate existence of the Yellow Cab Company was therefore unnecessary to sustain the judgment of conviction.

It is further contended that the admission in evidence of the ten-dollar bill taken from Filipak's shoe was error. Brolet testified that among other bills he had been robbed of a ten-dollar gold certificate. Shortly thereafter the police officers found in Filipak's shoe a bill of that character and denomination. One of the officers testified that at the police station Filipak denied, before his shoe was removed, that he had any money other than that found in his pockets. While there was no complete identification of the ten-dollar certificate taken from Brolet, the similarity of the bill found to the one stolen, the denial by Filipak that he had the bill, and the brief interval between the robbery and the discovery of the bill in Filipak's shoe, were circumstances which tended to prove the charge. The fact that the bill found failed conclusively to establish the fact in controversy did not render the bill inadmissible. It was the jury's province to determine the weight of this evidence.

Brolet testified that Filipak told him Wojcik would pay him $300 if he failed to identify the plaintiffs in error upon the trial. Filipak denied that he made any such statement. It is conceded, however, that Wojcik was not present and had no knowledge of the alleged offer. Objection was made that Brolet's testimony in this respect was inadmissible so far as Wojcik was concerned, but the objection was overruled. Even if the offer was made as Brolet testified, Wojcik, who was absent, could not be bound by it. The testimony was prejudicial to Wojcik and his objection thereto should have been sustained. *People* v. *Buckminster,* 274 Ill. 435; *People* v. *Damico,* 309 id. 577.

The plaintiffs in error complain of the interrogation of the prosecuting witness, Brolet, by the trial judge, and of his ordering Brolet and the plaintiffs in error in custody and raising the bail of the latter from $3000 to $15,000, all in the presence of the jury. Brolet had admitted on the preliminary hearing in the municipal court that he was not positive of his identification of the plaintiffs in error. That hearing occurred within a few days after the robbery was committed. Months later, when he testified on the trial in the criminal court, he expressed the same doubt. This led the trial judge to interrogate Brolet and to elicit from him the statement that the robbery occurred so quickly that he might have been mistaken and that he did not wish to convict innocent men. Brolet's testimony apparently incurred the displeasure of the trial judge to such an extent that in the presence of the jury he ordered both Brolet and the plaintiffs in error taken into custody and increased substantially the bail of the plaintiffs in error. After Brolet had been incarcerated in the county jail for the night, he testified on the next morning that the plaintiffs in error were the persons who had robbed him and that Filipak had entered into an arrangement with him by which Wojcik would pay him $300 for his failure to identify them on the trial. Whether the doubt of their identity which he expressed on the preliminary hearing, and again on the trial, was removed by the fear of further punishment or by his zeal to tell the truth cannot and need not be determined. When Brolet and the plaintiffs in error were ordered in custody Brolet had not testified to his alleged arrangement with Filipak. Even if the failure of Brolet positively to identify the plaintiffs in error as the robbers exasperated the trial judge, it is not easily discerned why, as the result of the witness' doubt, the plaintiffs in error should have been ordered incarcerated and their bail increased in the jury's presence. To order the incarceration not only of the prosecuting witness but also of the plaintiffs in error, and to

multiply the bail of the latter, while the trial was in progress, clearly indicated to the jury that the trial judge believed the plaintiffs in error guilty of robbery as charged in the indictment.

In all criminal prosecutions the accused persons, guilty or innocent, are entitled to a fair and impartial trial by a jury. (*People* v. *Berardi,* 321 Ill. 47; *People* v. *Black,* 317 id. 603; *People* v. *Gardiner,* 303 id. 204.) The jury is charged with the duty of determining the facts, and it is not the province of the judge, in a criminal case, to express by word or indicate by conduct in the jury's hearing any opinion upon the facts. (*People* v. *Garines,* 314 Ill. 413; *Briggs* v. *People,* 219 id. 330; *Synon* v. *People,* 188 id. 609.) The trial judge has the right to ask questions of witnesses or call other witnesses to the stand in order to ascertain the facts and elicit the truth concerning the questions at issue, but he must do it in a fair and impartial manner, without showing any bias for or prejudice against either party. (*People* v. *Lurie,* 276 Ill. 630; *People* v. *Salerno,* 306 id. 570.) Jurors are ever watchful of the attitude of the judge, and any disclosure of a hostile attitude on his part toward the accused person is very apt to influence them in arriving at their verdict. The impression conveyed to the jury by the acts of the trial judge in the instant case was necessarily highly prejudicial to the plaintiffs in error. Under the competent evidence in the record it cannot be said that, regardless of such prejudicial conduct, no verdict other than the one returned could have been found. In such a situation it is the duty of a court of review to assure to the accused a new trial. *People* v. *Lurie, supra; People* v. *Berardi, supra; People* v. *Garines, supra.*

For the errors indicated the judgment of the criminal court is reversed and the cause is remanded to that court.

*Reversed and remanded.*