(No. 22223.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER STATHAS *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1934.*

314

Eugene L. McGarry, for plaintiffs in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and J. J. Neiger, (Edward E. Wilson, J. Albert Woll, and Henry E. Seyfarth, of counsel,) for the People.

Mr. Justice Herrick delivered the opinion of the court:

An indictment was returned in the criminal court of Cook county charging the plaintiffs in error, Peter Stathas and George Katras, (hereinafter called the defendants,) with the crime of robbery while armed with a dangerous weapon. A jury found them guilty and they were sen-

tenced to the penitentiary. A writ of error has been sued out of this court to review the record.

The Edgewater Trust and Savings Bank is located at 5545 Broadway, Chicago. Emil W. Schellenberger was .the cashier of that bank on August 18, 1932, and had been for more than a year prior thereto. At about 12:30 P. M. of that day he was on duty at the bank. There were then in the bank other than the cashier, his brother, Frank Schellenberger, who was on duty in the second cage in the bank, Miss Hazel Strom, who was on duty in the first cage, and two other employees, Miss Cassidy and Miss Hazel Kyle, and about four or five customers of the bank. At that time two men walked into the bank, each armed with a sawed-off shot-gun. One man put a handkerchief over his face. The men said, "This is a stick-up; get down on the floor, face downward." The cashier was sitting at his desk. He immediately got down on the floor. One of these men struck the cashier on one leg with a shot-gun. The men climbed over the counter and rifled the cages, taking about $4500, consisting of $3500 in United States currency and about $1000 in checks.

On the trial the cashier testified that on August 18 he saw two men enter the bank; that his desk was in the front part of the bank and he had an unobstructed view of the men as they entered. He identified the defendant George Katras and pointed him out in the court room as one of the men who committed the robbery. He was unable to identify the other man who entered the bank on August 18 by reason of that man having a handkerchief over his face. Katras was not masked. The cashier further testified that on May 25, 1932, he had seen Katras in the bank at 9:17 in the morning; that on that occasion the bank was held up and robbed; that Katras was one of the several robbers; that they climbed over the top of the counter, and that Katras at that time was armed with a sawed-off shot-gun. The cashier further testified that he next saw

and recognized Katras on November 21, 1932, at the Summerdale police station, in Chicago; that there were no other officers nor any employees of the bank present at the police station; that on May 25 when the bank was robbed he was in the first cage; that there were four men; that three vaulted over the counter; that none of these wore handkerchiefs, and that Katras was one of the men who climbed over the counter; that the witness had at the bureau of identification examined some pictures and identified Katras as one of the men who participated in the hold-ups on August 18 and May 25.

Frank W. Schellenberger, brother of the cashier, was in the bank at the time of each robbery. He corroborated his brother as to the circumstances of the robbery of August 18, and likewise identified the defendant Katras as one of the men who robbed the bank on August 18 and May 25. He testified that the men left in a dark-colored automobile; that he again identified Katras on November 21 at the Summerdale police station; that the witness had been to the bureau of identification; that he had seen a number of pictures there and had identified Katras by a picture at the bureau of identification as one of the men who robbed the bank.

Edna Furlong, employed by the Edgewater Laundry Company, which is located next door immediately south of the bank building on Broadway, testified that on August 18, at about 12:30 P. M., she saw a black sedan, with its doors open, headed south, pull to the east side of the curb, which was the wrong side of the street; that the car was moving slowly; that three men ran out of the bank; that she ran out and got the license number of the car and wrote it down; that the men wore long top coats, with their collars turned up; that one of them carried a bag under his arm and passed within three feet of her; that one of the men glanced at her, and that the three men entered the automobile and drove away. She identified the defendant

Stathas as one of the men she saw come out of the bank and enter the automobile on this occasion. She testified that she next saw Stathas in the Summerdale police station on September 18, and that she then and there identified him as the man she saw coming out of the bank on August 18. One of the reasons her attention was attracted to the men was because of the season of the year and the fact that they were wearing long top coats with their collars turned up.

Police officer Nick and Lieutenant Norton testified as to the arrest of the defendants and their identification by other witnesses. The defendants were arrested in Wheeling, West Virginia, extradited and returned to Chicago.

Both defendants testified at the time of the trial and denied participation in the robbery. Their defense was an alibi. They produced three witnesses from Wheeling, West Virginia, who testified that the defendants were present at a party given at 75 Seventeenth street on August 18, 1932. This place, while dressed up as a confectionery store, was in reality a place where intoxicating liquors were sold. Katras was known in Wheeling by the name of Mike Aritos and Minos Aritos. He was rooming with the mother of one of the alibi witnesses. One of the witnesses testified that Katras, by the name of Minos Aritos, rented a room from her in April, went away in May, returned the first of June and stayed throughout July, August and September; that sometimes Stathas was with him at her home; that Stathas came with Katras in July and stayed until October; that she was sure Stathas stayed at her house during July, August and September, leaving about the middle of October. One of the other witnesses testified that she saw both the defendants in Wheeling in September; that she saw them almost every day during that entire month, and that she was positive about it. There is no question from the record but that Stathas was in the custody of the police in Chicago on

the 18th of September. He was released on bond about a week later. He stated that he owned a black Chrysler automobile; that he was in the business of selling intoxicating liquor; that he transported such liquor from Chicago to Wheeling, West Virginia; that Katras was in partnership there with a man named Milton Pitros, at 75 Seventeenth street, and that witness sold Katras liquor. He referred to Katras as his partner and stated this liquor business constituted their partnership. Katras testified that he drove a black Buick sedan; that he went to Wheeling on April 21 and stayed there until May 28; that his business there was boot-legging; that Stathas was in Wheeling on either the 22d or 23d of May and stayed with him for five or six days immediately following and that both were in Wheeling on August 18; that both originally had lived in Chicago for a good many years; that he and Stathas left on the third or fourth of June for Los Angeles, California, and arrived there three or four days later. The evidence does not disclose how long they remained in California, but they were arrested while they were there but for what offense is not shown.

The errors assigned upon which a reversal is sought may be grouped as follows: (1) That the court erred in the admission of the evidence with reference to the robbery of the bank on May 25; (2) that the ownership of the property was not proved as charged by the indictment; and (3) that the assistant State's attorney was guilty of misconduct on the trial of the case which deprived the defendants of their right to a fair trial.

It is urged that the testimony of the cashier and his brother tended to show a distinct, substantive offense committed by one or both of the defendants on May 25, and that the admission of such evidence was therefore improper and very prejudicial to the defendants' case. The general rule is that evidence of a distinct, unrelated crime is not admissible upon the trial of a defendant charged with the

commission of a criminal offense. There is, however, an exception to this rule generally recognized by the courts and text writers. Such exception is, that when the evidence offered tends to prove the identity of the person who committed the crime for which he is on trial, or that he was present at and where the crime was committed, such evidence is competent. Such evidence is also proper to meet or rebut the defense of alibi. The rule deducible from the authorities is, that if such evidence is material and relevant, even though it tends to prove the perpetration of another unrelated and separate criminal offense on the part of a defendant, the court may properly receive such testimony. *People* v. *Jennings,* 252 Ill. 534; *People* v. *Lenhardt,* 340 id. 538; *People* v. *Doody,* 343 id. 194; *People* v. *Mandrell,* 306 id. 413; *People* v. *Buskievich,* 330 id. 532; *People* v. *Beard,* 324 id. 311; 1 Roscoe on Crim. Evidence, (8th ed.) 138; 6 Ency. of Evidence, 677.

The circumstance that the same bank was robbed so recently before by men whose features were not concealed, was such as naturally to imprint a deep and lasting image of the men committing such robbery on the minds of those present and working for the bank. These witnesses had the right, for the purpose of enabling the jury to pass upon the weight and credibility of the evidence of such witnesses in their identification of Katras, to relate that the occasion on August 18 was not the first time on which they had seen that defendant and to state the occasion, place and circumstances under which they had first seen him. The question of identity was highly material to the issues. Although from the defendants' viewpoint it was unfortunate that on the occasion when such witnesses saw Katras for the first time he was engaged in the robbing of this same bank, yet such evidence was competent both on the question of identification and on the issue made by the attempted alibi. If the evidence went to the alibi, only, it was received out of its natural order in anticipation of

the alibi defense, although in *People* v. *Mandrell, supra, People* v. *Beard, supra,* and *People* v. *Jennings, supra,* kindred evidence attacking the defense of alibi on the part of the defendants was received as a part of the case in chief for the People. The evidence of the cashier and his brother was competent on the issue of the identification of Katras as a part of the State's case in chief, even though, as an incident thereto, it tended to contradict the alibi defense before the evidence of an alibi had been offered.

As to the second contention made by the defendants, the indictment charges that Emil W. Schellenberger was put in bodily fear and danger of his life, and that $3500, the money and property of the Edgewater Trust and Savings Bank, a corporation, which money and property were in the care, custody and control of Schellenberger, were taken from his person and against his will by force and intimidation. In the offense of robbery it is not material to prove the corporate existence of the corporation alleged to be the owner of the property stolen, (*People* v. *Filipak,* 322 Ill. 546,) but if it were, there is in the record sufficient evidence to show that the bank was a corporation. Moreover, as to a bank, the court will take judicial notice that it was an incorporated institution. Unincorporated banks in this State have not been permitted to do a banking business, nor to use the word "bank" in connection with their business, since January 1, 1921.

The gist of the crime of robbery is the force or intimidation employed in taking from the person of another, and against his will, personal property belonging either to him or in his care, custody and control. (*People* v. *Knox,* 302 Ill. 471; 2 Wharton on Crim. Proc. sec. 12, p. 11.) It is not necessary that the property should be actually on the body or in contact with the person robbed. The "taking from the person of another," where such taking is accompanied by force, intimidation or putting in bodily fear,

is completed by taking from the person assaulted, personal property of which he is the owner or which is under his personal care, control or protection. (*People* v. *Skally*, 342 Ill. 450; *People* v. *Braverman*, 340 id. 525; *People* v. *Filipak, supra; People* v. *Knox, supra; Burke* v. *People*, 148 Ill. 70.) Proof that the person assaulted had a qualified ownership or a special property interest in the personal property taken is sufficient proof to sustain the charge of ownership. (*People* v. *Knox, supra.*) The uncontradicted evidence here showed that Emil W. Schellenberger was the cashier of the bank; that he was on duty at the bank at the time of the robbery and as such cashier the money of the bank was there in his care, custody and control. While prostrate on the floor at the robbers' command, the cashier was struck by a gun in the hands of one of the robbers and the money then and there taken. The proof was ample to sustain the charge of robbery.

No complaint is made of the rulings of the trial court on the instructions. The facts were for the jury. There is ample, competent evidence in the record to justify the verdict returned.

There is some merit in the complaint made by the defendants of misconduct on the part of the assistant State's attorney. The trial judge was not guilty of any misconduct. The assistant State's attorney had a two-fold duty to perform: (1) To the people; and (2) to the defendants. He is a representative of the people. Although it is his duty to conduct the trial vigorously, yet he should not so deport himself that by reason thereof the defendant does not have a fair trial. In all criminal prosecutions the defendant, guilty or innocent, is entitled to a fair and impartial trial. (*People* v. *Filipak, supra.*) We re-affirm what was said on this subject in *People* v. *Evenow*, 355 Ill. 451. The defendants below were not represented by the same attorney who represents them in this court. Most of the happenings in the trial court of which complaint is

now made were not objected to on the trial and their propriety is not properly presented here for review. (*People v. Boetcher,* 298 Ill. 580.) On review of such acts of alleged misconduct as are here claimed to constitute reversible error, so far as we are permitted to review the same, we find no prejudice to the defendants' case sufficient to justify a reversal.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*