(No. 22381.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANTHONY GURDAK, Plaintiff in Error.

*Opinion filed October 17, 1934.*

THADDEUS C. TOUDOR, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Anthony Gurdak was indicted in the criminal court of Cook county for robbery while armed with a dangerous weapon. He entered the plea of not guilty; a jury found him guilty; a new trial was granted and upon a second trial without a jury he was again found guilty and sentenced to the penitentiary. He prosecutes this writ of error.

The Ross-Jorgensen Company is engaged in the retail dry goods business at 3520 Fullerton avenue in the city of Chicago. The store faces south and two entrances afford access from the street. Counters for the display of merchandise are placed throughout the store and the office is located in the northwest corner. On Saturday, January 21, 1933, about 6:30 o'clock in the evening, while a number

of customers were in the store, a man armed with a revolver took $379.15 from a cash register near the door to the office. At the same time another man stood near the west front door. After the money was taken both ran from the store.

Two witnesses were called by the prosecution to identify the plaintiff in error. Elsa Off, a sister of Reuben H. Jorgensen, the president of the company, testified that as she walked out of the office at the time in question she saw a man take money from the cash register, while Fannie Jorgensen, the cashier and manager of the store, stood near; that a clerk approached and the stranger pointed a gun at her and exclaimed "Somebody get her;" that the witness ran towards the front of the store but stopped when she discovered a man at the west front door with something concealed in his pocket; that she was nervous and excited and observed no peculiar features to distinguish him, and that a week later, at a police station, upon a review of ten or twelve men under arrest, she told the police officers that the plaintiff in error resembled the man who stood at the west door of the store at the time of the robbery; that he was requested to walk to the corner of the room in the police station and that she then identified him as the same person. On cross-examination it appeared that, with some interruptions, she had been employed in the store during the period of fifteen years, but did not know approximately the number of its employees; that she gave the police officers neither information concerning the height, the complexion, or the apparel, nor any other guide towards the identification of the person at the door; that she saw the plaintiff in error at the police station twice on Saturday, a week after the robbery, but did not remember the time of the day she called at the station; that the first time she saw him she was not certain whether he was the man who stood at the door; that she returned, talked to a police officer whose name and individuality she did not recollect,

saw the plaintiff in error again, and after he put on his hat and walked back, she was positive in her identification, and that she was convinced he was the man who stood at the door because, since the robbery, she had seen him in the court room several times.

The other witness who identified the plaintiff in error was Mary Mosely. She testified that on the particular Saturday evening, there were ten or twelve employees and from fifteen to twenty other persons in the store; that while she attended a customer at a table about twenty feet from the west front door, she noticed a man standing at that door with a gun partially withdrawn from his pocket; that she had never seen him before and did not mention his presence to any other person; that a week later she was taken to a police station by Jorgensen, the president of the company, and viewed seven or eight men under arrest, and after they were directed to put their hats on their heads, she recognized the plaintiff in error, one of their number, as the person who stood at the west front door of the store at the time the robbery was committed.

The plaintiff in error is twenty-one years of age, employed as an upholsterer and resides with his parents in the city of Chicago. He testified that on Saturday, January 21, 1933, he was at home until 6:30 P. M. when he went to a barber shop about eight doors distant; that he had his hair cut and was shaved and returned home at 7:30 o'clock; that on the afternoon of January 28, 1933, an inquiry from a certain police station was made for him; that he went to the station immediately and found Elsa Off and Mrs. Jorgensen there; that police officers directed ten or twelve young men, including the plaintiff in error, to stand against a wall; that their names were asked and they were told to turn around and put on their hats; that Elsa Off did not then identify the plaintiff in error, while Mrs. Jorgensen thought another of the young men entered the store the preceding Saturday; that an officer asked Mrs. Jorgensen

whether she identified any other person present and when she answered in the negative, the officer pointed towards the plaintiff in error and inquired whether he was at the store and again she gave a negative answer; that Elsa Off returned to the station later in the evening and after the proceeding of placing the men against a wall, asking their names and directing them to turn around was repeated, Elsa Off said she thought the plaintiff in error was one of the men engaged in the robbery, and that he promptly answered "You are badly mistaken, madam, I was not there." The plaintiff in error in his testimony on the trial denied that he ever approached or entered the Ross-Jorgensen Company's store or that he participated in or had any connection with the perpetration of the robbery.

The alibi interposed by the plaintiff in error was supported by the testimony of three other witnesses. Andrew Jedrzdjczyk, who had conducted a barber shop a few doors from the home of the plaintiff in error for twelve years, testified that on January 21, 1933, about 6:40 P. M., the latter came to his shop; that he asked and received a hair cut and a shave, paid seventy-five cents for those services and left about 7:20 o'clock. The witness fixed the date because the father of the plaintiff in error called at the shop the succeeding Saturday and said that his son was missing. Stella Jedrzdjczyk, the wife of the barber, whose home was to the rear of his shop, corroborated her husband's testimony with respect to the presence of the plaintiff in error in the shop on the day and hour fixed by him. She testified that a view of the interior of the barber shop could be obtained from her kitchen; that she was engaged in washing dishes and that she observed the time the plaintiff in error entered the shop from a clock above the sink. Joe Gorney, employed as a fireman at a soap factory for nine years, testified that he visited the home of the plaintiff in error occasionally; that he called there on the evening of January 21, 1933, from 6:00 until 9:00 o'clock, and that

the plaintiff in error was present when he arrived and remained until 6:35 o'clock.

It is charged in the indictment that an assault was made upon one Fannie Jorgensen, and the sum of $379.15 belonging to the Ross-Jorgensen Company, a corporation, and in her care, custody and control, was feloniously and violently taken from her person and against her will and was carried away. The first contention is that the record fails to disclose that the money was taken from the person or the presence of Fannie Jorgensen and that there is, in consequence, a fatal variance between the allegations of the indictment and the proof. Robbery, under the statute, is the felonious and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation. . (Crim. Code. sec. 246; *People* v. *Braverman,* 340 Ill. 525; *People* v. *Filipak,* 322 id. 546). The gist of the offense is the force or intimidation employed in taking from the person of another, and against his will, property belonging to him or in his care, custody or control. (2 Wharton on Crim. Proc. (10th ed.) sec. 1211; *People* v. *Stathas,* 356 Ill. 313; *People* v. *Daniels,* 354 id. 600; *People* v. *Knox,* 302 id. 471; *People* v. *Nolan,* 250 id. 351; *Schroeder* v. *People,* 196 id. 211; *Burke* v. *People,* 148 id. 70). The words "from the person of another" are not restricted in their application to those cases in which the property stolen is in actual contact with the person of the one robbed, but include within their meaning the taking, by force or intimidation, from the presence of the person assaulted, of property which either belongs to him or is under his personal control and protection. (1 Hale's P.·C. 532; *People* v. *Stathas, supra; People* v. *Braverman,* 340 Ill. 525; *People* v. *O'Hara,* 332 id. 436; *O'Donnell* v. *People,* 224 id. 218). Fannie Jorgensen, it appears, was the cashier of the store and had the care and custody of the money in the cash register. She stood near the register when the man armed with the gun took the

money from it. The money was taken by force and intimidation from the presence, as well as the control, of Fannie Jorgensen, and the commission of the offense as charged was established by the evidence.

The second contention is that participation in the robbery by the plaintiff in error was not established. To connect him with the offense, recourse must be taken to the testimony of Elsa Off and Mary Mosely. The first of these witnesses had been employed in the store, with occasional interruptions, during fifteen years, yet she did not know, even approximately, the number of its employees. After witnessing the first robber, who was armed, take money from the cash register, she ran towards the front of the store and stopped when she discovered a man at the west front door. She was nervous and excited at the time and observed no peculiar features to distinguish him. It is obvious that she could not, and she admits that she did not, give the police officers any description or information which might lead to the apprehension of the man she claims stood at the west front entrance to the store. She called at the police station twice on Saturday, a week after the robbery was committed, and on her first visit was not certain whether the plaintiff in error was implicated in the offense. After holding a conversation with a police officer she could not identify, she returned, viewed the plaintiff in error wearing his hat and then recognized him as the person at the door during the robbery, and gave as the reason for her identification, the fact that she had seen him in the court room several times since the robbery. The other witness, Mary Mosely, occupied in attention to a customer, and while approximately thirty persons were in the store, noticed a man at the west front door with a gun projecting from his pocket. She did not mention his presence to any other person, and a week later, when taken to a police station, she did not identify the plaintiff in error until he put on his hat. Neither witness had ever

seen the plaintiff in error before and the opportunity of each for observation was extremely limited. The excitement, the inaptitude to observe obvious and familiar things and the inability to give the police officers a description of the person at the door, all shown by the first witness; the indifference which the second manifested by her failure to make known the presence of an armed stranger at the door during the perpetration of the robbery; the hesitancy of both witnesses in their identification of the plaintiff in error and the circumstances under which that identification was made, and the fact that, of the number of persons in the store and near the door at the time, no other witness could identify the plaintiff in error, all tend to impair the force to be accorded the evidence of the prosecution. Opposed to that evidence is the testimony of the plaintiff in error, the visitor at his home and the barber and his wife. The last three apparently were disinterested witnesses. Their testimony was positive and unimpeached that they saw the plaintiff in error during the time the robbery was perpetrated, the first at his father's house and the other two at the barber shop shortly thereafter. A consideration of all the evidence raises a grave and serious doubt of the guilt of the plaintiff in error. In such a situation, the judgment should be reversed and the cause remanded for a new trial. *Keller* v. *People,* 204 Ill. 604; *Cunningham* v. *People,* 210 id. 410; *Dahlberg* v. *People,* 225 id. 485; *People* v. *Bolik,* 241 id. 394; *People* v. *Rischo,* 262 id. 596; *People* v. *Thomas,* 272 id. 558; *People* v. *Ahrling,* 279 id. 70; *People* v. *Zammuto,* 280 id. 225; *People* v. *Heep,* 302 id. 524; *People* v. *Langaas,* 339 id. 267; *People* v. *White,* 347 id. 576; *People* v. *McPheron,* 354 id. 381.

The judgment of the criminal court is reversed and the cause is remanded to that court.

*Reversed and remanded.*