(No. 22424.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH KUBISH, Plaintiff in Error.

*Opinion filed October 17, 1934.*

Roland V. Libonati, (John M. Lonergan, of counsel,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and J. J. Neiger, (Edward E. Wilson, J. Albert Woll, and Henry E. Seyfarth, of counsel,) for the People.

Mr. Justice DeYoung delivered the opinion of the court:

Joseph Kubish and James LeMar were indicted in the criminal court of Cook county for robbery while armed with a dangerous weapon. A jury found them guilty as charged; motions for a new trial and in arrest of judgment were denied, and they were sentenced to imprisonment in the penitentiary at Joliet. Kubish prosecutes this writ of error for a review of the record.

On March 8, 1933, about 6:30 P. M., four men entered a men's furnishing store and printing shop conducted by four Chinese at 2324 Wentworth avenue in the city of Chicago. Ng Dong was seated on the balcony in the rear of the store reading a newspaper when his attention was at-

tracted by the ringing of the front door bell. Hughes Lee, Ng Song and C. W. Ton were in the basement where the printing presses were located. Dong saw the intruders rush into the store and descended to the main floor. Lee also heard the door bell and went up-stairs from the basement. One of the strangers, identified as Kubish, approached Dong, pointed a revolver at him and commanded him to open the safe in the rear of the store. Another of the strangers leveled a sawed-off shot-gun at Lee while Dong, in obedience to the command of Kubish, opened the safe. Kubish searched the safe and took from it a scarf pin and $160 in money. Voices were heard in the basement and Kubish directed one of his companions to the floor below stating that if anyone was discovered at a telephone he would kill every person employed in the store. The Chinese in the basement were brought to the main floor, ordered to the rear, and Kubish then searched their pockets. The show-cases were rifled and various articles of jewelry and wearing apparel were taken. A woman's watch was stolen from a drawer in a desk. The intruders were in the store about half an hour and the store was well lighted. Upon Kubish's order, an associate marched the Chinese to the basement and the robbers departed through a side door. Dong immediately telephoned the police, informed them of the robbery and described Kubish as about five feet ten inches tall, and weighing approximately one hundred forty pounds. On April 10, 1933, Kubish, LeMar and one Steve Rusnik were arrested. Dong and Lee identified Kubish at the police station in the afternoon of that day. At a second review of persons under arrest held at the station on the evening of the following day, Lee again, and, in addition, Song and Ton identified him. Only one of the Chinese claimed to recognize LeMar and none identified Rusnik who was subsequently released.

Ng Dong testified that he had three partners and two employees; that the money and the other property stolen

belonged to him; that Kubish wore a leather lumber jacket and a soft gray hat and that he remembered his face because of the pimples and scars it exhibited. On cross-examination he stated that one of his employees went with him to the police station on April 10, 1933. Lee's testimony discloses that he worked for Dong; that Kubish threatened to crack Dong's head unless he opened the safe; that he remembered Kubish's face by a blemish on it and that he accompanied Dong to the police station on the tenth day of April. Song testified that he was employed by Dong and that Kubish wore a short over-garment and a felt hat. From Ton's testimony it appears that he had been in partnership with Dong for more than ten years; that he told the police Kubish was over five feet tall and appeared to wear a leather jacket, and that he remembered the latter's face and, in particular, a scare on the right side of his neck.

The defense rests upon the testimony of three witnesses, the plaintiff in error, his mother and a sister. The plaintiff in error denied participation in the robbery. He testified that he was twenty-three years of age, weighed one hundred fifty pounds and was five feet ten and one-half inches tall; that he resided with his mother and remained at home during the forenoon of March 8, 1933; that he spent the afternoon at his sister's house, about a mile distant; that he recollected visiting her on the day of the robbery because it was a Monday; that he usually visited his sister every second day; that he called upon her on the seventh and tenth days of March, but not on the sixth; that he was at home every day from 5:30 to 7:30 P. M.; that at the time the robbery occurred he was at home with his mother and that his sister, Mrs. Kern, and her husband were also present.

It appears from the testimony of Anna Kern, the sister, that the plaintiff in error was at her house the greater part of the afternoon of March 8, 1933, a Monday, on which

she did her washing; that he often called on those days and assisted her; that he remained on the particular day until about 5:00 o'clock when he accompanied her and her two children to her mother's home; that the gas in her house had been shut off; that as a result she had taken her evening meal at her mother's house for nearly a month and that this meal was always served between 6:00 and 7:30 o'clock. Mary Kubish, the mother, testified that Mrs. Kern had supper with her for a month; that the plaintiff in error was at home for that meal every evening, and that on March 8, 1933, he returned to her house with her daughter, Anna Kern.

The plaintiff in error makes two contentions for a reversal of the judgment. The first is that there is a fatal variance between the allegations of the indictment and the proof with respect to the ownership of the property stolen. It is argued that the evidence discloses the property taken was not owned by Ng Dong as charged but that its ownership was vested in a partnership consisting of Dong and Ton. The prosecution answers that, in the case of robbery, proof of the ownership of the property taken need not be made beyond showing that it was not the property of the assailant.

Robbery is defined in 3 Coke's Inst. 68, as "a felony by the common law, committed by a violent assault, upon the person of another, by putting him in fear, and taking from his person his money or other goods of any value whatsoever." Other definitions of robbery at common law are "the felonious and violent taking of any money or goods from the person of another, putting him in fear, be the value thereof above or under one shilling." (1 Hale's P. C. 532), and "A felonious taking of money or goods to any value, from the person of another, or in his presence, against his will, by violence or putting him in fear." (2 East's P. C. 707). Robbery, under the statute, is the felonious and violent taking of money, goods or other

536

valuable thing, from the person of another by force or intimidation. (Crim Code, sec. 246; *People* v. *Braverman,* 340 Ill. 525; *People* v. *Filipak,* 322 id. 546). The gist of the offense, both at common law and under the statute, is the force or intimidation employed in taking from the person of another, and against his will, property belonging to him or in his care, custody or control. (2 Wharton on Crim. Proc. (10th ed.) sec. 1211; *People* v. *Stathas,* 356 Ill. 313; *People* v. *Daniels,* 354 id. 600; *People* v. *Knox,* 302 id. 471; *People* v. *Nolan,* 250 id. 351; *Schroeder* v. *People,* 196 id. 211; *Burke* v. *People,* 148 id. 70). The words "from the person of another" are not restricted in their application to those cases in which the property stolen is in actual contact with the person of the one robbed, but include within their meaning the taking, by force or intimidation, from the presence of the person assaulted, of property which either belongs to him or is under his personal control and protection. (1 Hale's P. C. 532; *People* v. *Stathas, supra; People* v. *Braverman,* 340 Ill. 525; *People* v. *O'Hara,* 332 id. 436; *O'Donnell* v. *People,* 224 id. 218). An allegation in an indictment for robbery which charges that the property taken was in the care or custody of the person robbed, supported by proof, is sufficient to sustain a conviction for robbery even though the person assaulted does not own the property. 2 Wharton on Crim. Proc. (10th ed.) sec. 1211; *People* v. *Daniels,* 354 Ill. 600; *People* v. *Skally,* 342 id. 450; *People* v. *Ziderowski,* 325 id. 232; *People* v. *Filipak,* 322 id. 546; *People* v. *Rogers,* 303 id. 578; *People* v. *Knox,* 302 id. 471.

The evidence discloses that Dong was compelled to open the safe; that the money in it was seized, and that valuable articles were taken from the show-cases and a desk. The money and property were taken by force and intimidation from the presence, as well as the control, of Ng Dong. Proof of the offense of robbery, under the statute, was complete and it was unnecessary to prove that Dong was

the sole owner of the property seized to sustain the judgment of conviction. (*People* v. *Stathas, supra; People* v. *Rogers, supra; People* v. *Knox, supra*). The alleged variance between the allegations of the indictment and the proof is therefore not established.

The second contention of the plaintiff in error is that the evidence fails to establish his guilt beyond a reasonable doubt. The evidence discloses that the plaintiff in error and his accomplices were in the store about half an hour; that he was armed with a deadly weapon; that he searched the four victims of the robbery; that $160 in money and other valuable property were seized; that the store was well lighted at the time and that the witnesses had ample opportunity to distinguish the features and general appearance of the plaintiff in error. Their testimony shows that they observed him closely and they described his personal appearance with unusual accuracy. That only one of the witnesses identified LeMar at the police station and that none recognized Rusnik are facts which emphasize the care and discrimination manifested in their identification of the plaintiff in error.

It is argued, however, that the testimony of the prosecution's witnesses should be disregarded because, it is said, Dong testified that he went to the police station alone while Lee stated that he accompanied Dong. The record discloses that Dong testified neither Lee nor Song nor Ton were with him when he appeared before the grand jury, but that an employee accompanied him to the police station. Lee confirmed this statement. Even if the witnesses differed in the respect charged, the discrepancy would concern an immaterial matter and would not justify the rejection of the testimony of the witnesses for the prosecution.

The defense interposed was an alibi, supported by the testimony of the plaintiff in error, his mother and his sister. Two of these witnesses, the plaintiff in error and his sister, testified that they recalled the day of the robbery because

it was a Monday. The crime was committed on March 8, 1933, which, it appears, was a Wednesday. The plaintiff in error further stated that he did not go to his sister's home on March 6, 1933, which was the preceding Monday. These discrepancies and the bias of the witnesses called by the defendant undoubtedly led the jury to reject the alibi. The law has committed to the jury the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the jury. (*People* v. *Mangano,* 356 Ill. 178; *People* v. *Fortino,* 356 id. 415; *People* v. *McPheron,* 354 id. 381; *People* v. *Chaney,* 342 id. 175; *People* v. *Herbert,* 340 id. 320; *People* v. *Yates,* 339 id. 421; *People* v. *Martin,* 304 id. 494). When all the evidence is considered the guilt of the plaintiff in error was proved beyond a reasonable doubt.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*