THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BERNARD PAPKE, Plaintiff in Error.

*Opinion filed April 20, 1927.*

1. CRIMINAL LAW—*credibility of witnesses on question of alibi is for the jury.* The jury are the judges of the weight of the evidence and the credibility of the witnesses, and where witnesses for the People positively identify the defendant as the person who committed the crime while testimony of witnesses for the defendant tends to prove an alibi it is a fair question for the jury to determine the weight of the testimony, and their finding against the defendant will not be disturbed where the testimony of the alibi witnesses is not impressive and the evidence for the People is sufficient to warrant a finding of guilty.

2. SAME—*when notes of defendant's counsel are not admissible to prove conversation with the defendant's witness.* The rule that where a part of a conversation is brought out on cross-examination the entire conversation, so far as competent, may be brought out on re-direct examination cannot be applied to authorize the introduction in evidence of written answers to questions which a witness for the defendant testifies on cross-examination he was asked by the defendant's counsel in a conversation before the trial, and which answers, the witness testifies, the attorney wrote down during the conversation.

3. SAME—*when instruction defining robbery is not erroneous.* An instruction defining robbery as the felonious and violent taking of money, goods "or other thing" from the person of another by force or intimidation is not erroneous in omitting the word "valuable," which in the statute qualifies the word "thing," where the defendant is charged in the indictment with the felonious and violent taking of money and the evidence for the People proves the taking of money.

4. SAME—*jury may be instructed as to the penalty.* It is not error to tell the jury, in a proper instruction, what the penalty is for the crime with which the defendant is charged.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

EVERETT JENNINGS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Bernard Papke was found guilty by a jury in the criminal court of Cook county under an indictment which charged him with robbery of Samuel Loseff of $140 while armed with a dangerous weapon. The court overruled motions for a new trial and in arrest of judgment and sentenced defendant to confinement in the penitentiary for a term of years not to exceed the maximum term fixed by the statute. The record is brought to this court for review by writ of error.

The errors assigned and argued are, (1) that the court erred in refusing to admit competent evidence offered by defendant; (2) that the evidence was not sufficient to prove guilt beyond a reasonable doubt; (3) that the court erred in giving instructions.

Loseff testified he conducted a drug store at 3767 Southport avenue, Chicago. On the 26th of February, 1925, he was in the store behind the counter and about 11:15 o'clock at night defendant came in and asked for a package of Camels. He laid down thirty cents, and witness noticed one side of his face was scratched and asked him if he was hurt. Defendant grunted and witness turned to the cash register. Before he got to the cash register defendant came in the passageway, pulled a gun from his pocket and said, "Get back, you —— —— ——;" that witness went back and told defendant not to lose his head—that he could have anything witness had but to do him no harm; that defendant took witness back of the prescription case and made him lie down; that he lay down face upward, and defendant said with vulgarity that he would kill him and ordered him to turn over; that he did so, and defendant took from his pocket a rope and tied witness' hands crosswise behind his back; that all the time defendant had the gun near him; that he went through witness' pockets, from which he got five dollars, witness thought, and took at least $145 or $155 in currency and checks, the daily receipts of the business; that witness told defendant the checks would do him no good, and defendant said he would not take them; that witness heard the voice of a customer in the store; that defendant went to where the customer was and told him it was too late—they were going to close up; that the customer said he wanted a cigar, and defendant asked him what kind; that witness recognized the voice of Homer Ellis, who said he wanted Say-so cigars; that Ellis conducted a grocery store in the neighborhood of witness' drug store; that he heard defendant ask Ellis, after giving him the cigars, what he was waiting for, and Ellis said for his change; that after Ellis left, witness told defendant he had all his money and begged him to not hurt him; that he saw defendant go to the cash register, ring it open and clean it out and then walk out of the front door; that de-

fendant had on a cap and a coat of a copper-brown color; that a few minutes after defendant left, Ellis and the watchman came in and untied witness' hands; that he did not know defendant at that time and next saw him in the detective bureau, where the detective brought out about twelve men and witness recognized defendant as the man who robbed him; that Ellis was in the habit of coming into his store and came mostly after closing his own store. On cross-examination he said he had discussed the robbery with Ellis but could not say how many times,—probably two or three times,—and each told the other what he saw.

Ellis testified he was in the grocery business and his store was a short block from Loseff's drug store. He went into the drug store February 26 and got almost to the rear of the store when a young man he had never seen before came from behind the prescription case. The young man was the defendant. He said it was too late to get anything, as they were closing up. Witness told him he wanted a couple of cigars and pointed to Say-so cigars, two for fifteen cents, saying he wanted two and laid down twenty cents. Defendant said that was right, and witness told him it was not—they were two for fifteen. Defendant took a couple of steps toward the cash register, then took a nickel from his pocket and laid it on the show case. Witness picked it up and lighted a cigar. While defendant was waiting on him witness looked at him closely—at his face and clothing. He had a little dash of blood on his chin. He had on a greenish-brown coat. It had the appearance of having faded. He had a cap pulled down fairly well over his eyes. After witness lighted his cigar he went out and tried to find a telephone, but the places of business were closed. He then came back and looked through the glass of the store and saw defendant empty the cash register drawer, then walk out of the store and across the street, get into an automobile and drive away. Witness could not see the license number because it was covered

with mud. When he went back to the drug store he called the police station. He next saw defendant at the detective bureau. He was with eight or nine other men. The man who waited on him in the store the night of February 26 was the defendant.

The foregoing was the material testimony offered on behalf of the People.

Defendant offered the testimony of three witnesses to prove an alibi. We shall not set out all that testimony in detail. Charles Kennedy testified defendant called him on the telephone the evening of February 26, between 7:40 and 8:00 o'clock. He was with defendant all evening. They met at witness' home and went to supper together, then went to the Merry Gardens, a dancing place. No one was with them. Defendant left there for home at a quarter past twelve. He had no skin abrasion on his chin that he knew of. He could not see any. He fixed the date on account of a primary election in his ward being held the 24th. Al Mieschke testified he saw defendant about 7:00 or 7:30 in the evening of February 26 and there was a discussion about his going to the Merry Gardens. John Mieschke testified he saw defendant the night of February 26, 1925, at the Merry Gardens from 9:30 until about 12:00 o'clock, when he and defendant went home. Defendant did not testify.

It is contended the evidence was highly conflicting and insufficient to prove guilt beyond a reasonable doubt. We have repeatedly held that this court will not substitute its judgment for that of the jury in a case of merely conflicting testimony. The jury are the judges of the weight of the evidence and the credibility of the witnesses. Two witnesses testified positively that defendant was the man who robbed Loseff at his store between eleven and twelve o'clock the night of February 26. One alibi witness testified he was with defendant at another place until after twelve o'clock, one testified he went home with him about

midnight, and one that he heard him talking about going to the Merry Gardens that evening. The testimony of the alibi witnesses read from the record is not impressive, and it perhaps was less so when heard from their mouths on the witness stand. It was a fair question for the jury to determine the weight of the testimony and the credibility of the witnesses. They chose to believe Loseff and Ellis, and we cannot say they were not warranted in doing so, and the judgment cannot be disturbed on that ground.

John Mieschke, one of the alibi witnesses for defendant, was on cross-examination asked whether he had talked to defendant's attorney before the trial, and said he went to the attorney's office the Saturday before the trial because he had heard about defendant's trouble but did not know the date it was supposed to have happened. He wanted to help defendant if he could. No one asked the witness any question about the 26th of February. The attorney did not ask him about that date but witness remembered it. He testified the attorney asked him questions and wrote down his answers. Defendant's counsel then offered to introduce the paper containing the written answers to the questions which the attorney asked him before the trial. Objection to its admission was sustained, and counsel now contends the court erred in not admitting it, for the reason that where a part of a conversation is brought out on cross-examination, the entire conversation, so far as competent, may be brought out on re-direct examination. That rule of law has no application to the introduction of the paper offered in evidence, and we think the court correctly ruled in denying its admission.

Complaint is made of instruction No. 2 given to the jury on behalf of the People. The instruction told the jury they were the sole judges of the credibility of the witnesses and what elements they might consider in determining that question. Counsel for defendant says the instruction gave the jury an erroneous standard by which to

determine that question. In what way it gave an erroneous standard is not pointed out. *People* v. *Krauser,* 315 Ill. 485, is cited, but the instruction there considered is wholly different from the instruction complained of. There was no error in giving the instruction.

Instruction No. 7 given for the People is also complained of. That instruction defined robbery as a felonious and violent taking of money, goods "or other thing" from the person of another by force or intimidation. It also told the jury what the penalty provided by the statute was for the offense. It is complained the instruction was erroneous in that it omitted the word "valuable," which qualifies the word "thing." The statute defines robbery as the felonious and violent taking of "money, goods or other valuable thing" from the person of another by force or intimidation. Defendant was charged in the indictment with the felonious and violent taking of money from Loseff, and the proof of the People was that defendant took money violently from Loseff. It is also objected that the instruction stated what the penalty was for robbery, and this is said to be an additional infirmity of the instruction. This court held in *People* v. *Talbe,* 321 Ill. 80, that it was not error to tell the jury in an instruction what the penalty may be for the crime with which defendant is charged. There is no merit in the criticism made of this instruction.

Only four instructions were given for the People and eleven were given for the defendant. The instructions fairly and correctly told the jury what the law applicable to the case was.

There is no reversible error in the record, and the judgment is affirmed.

*Judgment affirmed.*