(No. 22861.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TONY KANDIAN *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1935.*

W. W. O'BRIEN, THOMAS J. McCORMICK, and JAMES C. RENZINO, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Tony Kandian, Alex Bacevich, John Parlick (otherwise called Sam Lavetere) and Anthony Parovich were indicted in the criminal court of Cook county on a charge of robbery with a gun. Each pleaded not guilty. The jury before whom the case was tried returned a verdict finding each of the accused guilty. They were severally sentenced to the penitentiary for an indeterminate period of from one year to life. To reverse that judgment the defendants have sued out this writ of error.

Daniel Fish owned a tavern on Cottage Grove avenue, near the World's Fair grounds in Chicago. About 11:00 P. M. of October 5, 1933, the place of business was robbed by four men. Fish testified that there was a bar about eighteen feet long on one side of the front room and booths along the north wall of that room. Back of the bar-room was what was termed a "back room," and to the rear of the back room there was a small kitchen, six by twelve feet. Three entrances led into the premises—the front, side and rear. Fish testified that he was in the bar-room. A man came in the front door armed with what appeared to be a shot-gun or machine gun and notified those present that it was a hold-up and for them to face the rear. There were then present from ten to twenty patrons. The witness further testified that Parlick, with a

gun in his hand, came up to him and ordered the witness into the kitchen, and that the witness observed Parlick at that time. Mrs. Fish and three patrons of the tavern were also put in the kitchen. Fish stated that while he was in the kitchen Parlick took eight dollars out of witness' pocket; that after he had been in the kitchen from three to five minutes he heard some shooting, and almost immediately after the shooting commenced the defendants Parovich, Parlick and Bacevich ran from the bar-room into the kitchen, hesitated there a minute before they discovered a way out, and escaped through the rear door. Fish had no recollection of having seen the defendants before that night. While he did not remember anything distinctive about the features of the three men, he identified them from their general appearance. The testimony showed that at the police station, two days after the robbery, Fish positively identified the three defendants last named, and he was quite positive in his identification of these three defendants during the trial.

Mrs. Fish testified that she was sitting in the front part of the bar-room, facing the street entrance, when Bacevich came in first, carrying either a shot-gun or machine gun, and said, "This is a hold-up," and that she was then taken to the kitchen and there saw Parlick go through her husband's pockets. This witness positively identified the defendants Bacevich and Parlick. The bar-tender testified that about 11:00 o'clock of October 5 two men came in and announced that it was a hold-up. The witness put up his hands and walked to the back room. There he stood with his face to the wall. A wrist watch was taken off of his wrist. At the time the men came in the shades were up and someone lowered the shades. There was about $25 to $40 in money in the cash register, which was taken. Behind the bar there was what is known as a work-board, about two feet from the cash register. After the robbery the bar-tender found a revolver on this work-board. He

delivered this revolver to officer Callahan. A patron of the place was sitting in a booth facing the rear when two men came alongside of him, both carrying guns. This witness identified one of the two men as Bacevich, and stated that Bacevich was armed with what appeared to be a shotgun. This witness was put in the back room and from three to five minutes later heard shots fired and got down on the floor. He identified none of the defendants other than Bacevich.

Police officers Frank McNamara and Chris Callahan were traveling their district in an automobile. Their suspicions were aroused by observing that the shades of the Fish tavern were completely drawn. The officers immediately pulled to the curb. On alighting they saw a Ford V-8 with two different license plates on it, with the door open and the motor running, standing in front of the tavern. McNamara looked through a crack in the frame holding the glass window and saw about ten people in the center of the room along the north wall, with Kandian, just inside the door, covering them with a blue-steel revolver. The officers entered and called out, "Police officers!" McNamara stated that when the officers entered Parovich was standing behind the bar, facing the cash register, and Bacevich was at the end of the bar with a machine gun or shot-gun. Callahan immediately fired one shot at Parovich, who dropped behind the bar. Bacevich fired a shot at the police officers. In the meantime officer McNamara had grabbed Kandian, smothered Kandian's gun into Kandian's stomach, gripped him by the arm and held Kandian in front of the officer. Bacevich raised the gun with which he was armed, whereupon McNamara threatened to blow Kandian's head off, and told the other robbers that if they came out shooting and he was hit he was going to take Kandian with him. Kandian said, "Give me a break; don't kill me." Parlick, Bacevich and Parovich ran into the kitchen and escaped. The officers disarmed Kandian,

put him in their car, circled the neighborhood for a few minutes in an effort to locate the other robbers, and then returned to the tavern. It was at this time that Callahan received the revolver from the bar-tender. Officer Callahan testified to substantially the same facts as were stated in the testimony of officer McNamara. The officers identified Parovich as the tall man behind the bar. McNamara said Parovich had his back to him and he could not see his face until a shot rang out, when Parovich turned around for an instant or two. McNamara's identification is based on that view and the general appearance of Parovich. Callahan identified Parovich by his general appearance and by his profile. Parovich, Parlick and Bacevich were arrested the following night at Fortieth street and Ashland avenue while riding together in an automobile.

The defendant Parovich took the stand and categorically denied all of the evidence introduced against him by the People and denied that he committed the crime or had anything to do with it. He stated that about 8:30 P. M. on October 5, 1933, he went to the World's Fair with Paulina Vrankovich, with whom he was then keeping company, and that he did not leave the fair grounds until after 12:00 o'clock, when he took her home. He testified he had known Bacevich for seven or eight months, knew Parlick only slightly for two months, and did not know Kandian at all. He denied being in an automobile with Kandian between October 1 and 5, 1933. Paulina Vrankovich corroborated the evidence of Parovich about keeping company with him and that the two were at the World's Fair together during the time and on the occasion testified to by Parovich. Kandian testified that he went to the World's Fair the night of October 5, left there and went to Fish's tavern about 11:00 o'clock; that when he got just inside the door he stepped on something and found it was a gun, and as soon as he picked it up three men came in behind him and said, "This is a stick-up." He identified officer

McNamara as one of the three robbers, said McNamara grabbed him, fired a couple of shots at someone behind the bar, then backed out and put Kandian in the automobile. Kandian denied knowing Parovich, Parlick or Bacevich and denied any complicity in the hold-up.

Police officer Berger, assigned to the stolen-auto division, was called in rebuttal. He testified that he had known Kandian for about two years, and that at about 3:00 or 3:15 o'clock in the morning of a day between the first and fifth of October, 1933, at Forty-second street and Princeton avenue, he saw Kandian riding in a Ford car with Bacevich, Parovich and Parlick and had a conversation with them. It was stipulated that officer O'Donnell was with officer Berger at the time in question and would testify to the same state of facts.

Over the objection of the defendants, Edmund Costello was permitted to testify that he and his partner ran a tavern at 1474 West Seventy-fourth street; that the revolver above referred to which was handed to officer Callahan by the bar-tender belonged to the witness' partner; that the revolver was in their tavern on the night of September 30, 1933; that Parovich was in this tavern on that night, and that the revolver was there that night when Parovich was present but was gone after Parovich left. Fish testified that he did not own the revolver and had never seen it until his attention was called to it after the robbery. Defendants Bacevich and Parlick did not take the stand.

It is contended that error was committed in permitting the revolver to be introduced in evidence, and that the evidence of Costello as to the ownership of the revolver and that it was missing from his tavern after Parovich had been there on the night of September 30 was improper. With respect to the admissibility of the revolver the evidence is conclusive that the revolver was not, prior to the time of the hold-up, where immediately after the robbery it was found. It was not the property of the bar-tender

nor of the proprietor of the tavern and neither had ever seen it before. The evidence of the police officers was that Parovich was at the cash register. The evidence connected Parovich with having obtained possession on the night of September 30 of the revolver. The record tends to show that Parovich was at the very place where the revolver was found immediately after he left and the revolver had not been there previous to his presence. While the evidence was circumstantial, yet the circumstances were closely connected and had a tendency to show the possession of the revolver by Parovich at the time of the robbery of the Fish tavern. The revolver was properly admitted in evidence. *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *McGuirk,* 312 id. 257; *People* v. *Durand,* 307 id. 611; *People* v. *Foster,* 288 id. 371.

As to the contention that the testimony of Costello indirectly raised the inference of Parovich's being guilty of a crime in stealing the revolver from the Costello tavern, and that such evidence was therefore prejudicial to the rights of the defendant Parovich, Costello was not asked, nor did he undertake to detail, in what way the revolver was taken from his tavern. There was no evidence tending to show that the revolver was taken forcibly nor was there any evidence that the revolver was taken without the permission of the owner. Even though it be conceded that such evidence might possibly raise an inference that the revolver was obtained by improper means, yet it was competent as tending to prove that Parovich was one of the robbers. The general rule is, that evidence of a distinct unrelated crime is not admissible upon the trial of the accused charged with the commission of a different criminal offense. The exception to the rule, however, is, that when the offered testimony tends to prove the identity of the person who committed the crime for which he was on trial, or that he was present at the place where and at the time

when the crime was committed, such evidence is competent. *People* v. *Stathas,* 356 Ill. 313.

Lastly, it is urged that the evidence is not sufficient to warrant a conviction of the defendants, and that the People failed to prove the identity of the accused beyond a reasonable doubt. It is particularly urged that in view of the testimony relative to the alibi the identity of the defendant Parovich and his complicity in the commission of the crime were not established with that degree of certainty necessary to overcome the presumption of innocence. The story told by the defendant Kandian of stumbling over the gun and of officer McNamara being the leader of the robbers appears to be preposterous and wholly unworthy of belief. Parlick was positively identified by both Fish and his wife. Bacevich was identified by Fish, who saw him leave the premises through the kitchen door; by Mrs. Fish, who saw him come in the front door; by John Franklin, a patron, whom Bacevich took to the back room, and by officers McNamara and Callahan, who saw this defendant with a gun in the bar-room. The identification of Parovich rests upon the testimony of Fish and of officers Mc-Namara and Callahan. While the time was brief in which the officers had an opportunity to observe the defendant Parovich, yet the circumstances were such as would, in the ordinary course of human events, create a deep impression upon the mind of an officer. It will be remembered that Bacevich was at one end of the bar and Parovich was at the cash register, and that Bacevich shot at the officers and officer Callahan fired a shot at Parovich. Furthermore, the circumstantial evidence relative to the finding of the revolver on the work-board, near where Parovich stood, was before the jury, as well as the denial of Parovich that he knew the defendant Kandian, against which was arrayed the impeaching testimony of police officers Berger and O'Donnell that they had seen Parovich about 3:00 o'clock in the morning in the company of the other three

defendants within less than a week of the robbery of the Fish tavern.

The instructions are not made a part of the record and the defendants are apparently satisfied that the instructions are proper. We therefore assume, in deciding the issues, that the jury were not influenced or affected by any incorrect instructions prejudicial to the defendants' rights. The function of a jury is to decide the facts. In controversial issues the jury see and hear the witnesses testify. The jurors doubtless appraise each witness as he testifies and test his evidence by those standards which the ordinary man uses in the conduct of his own affairs, for human nature does not change from the mere fact that the given individual is serving in the jury box. The function of the jury is to decide the weight and credit to be accorded the testimony of the several witnesses, and where the issue is one of identity the court will ordinarily not interfere with the verdict. (*People* v. *Maciejewski,* 294 Ill. 390.) In the case at bar, if the evidence was credible it was ample to establish the *corpus delicti,* the identity of the defendants and their commission of the crime charged. To the jury in the case here was committed the issue of the credibility of the witnesses and of the weight to be given to their testimony. Unless the verdict is palpably against the weight of the evidence this court will not interfere. (*People* v. *Fitzpatrick,* 359 Ill. 363; *People* v. *Kidd,* 357 id. 133.) The evidence is not of an unsatisfactory character. On the record made we would not be justified in disturbing the verdict.

We find no prejudicial error in the record, and the judgment of the criminal court is therefore affirmed.

· *Judgment affirmed.*