(No. 23334.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH PECHO *et al.* Plaintiffs in Error.

*Opinion filed February 19, 1936—Rehearing denied April 10, 1936.*

EDWARD M. KEATING, and ALBERT E. BUCCIERE, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiffs in error, Ralph Pecho and James DiForti, otherwise called Charles DeNaso, were indicted in the criminal court of Cook county for the crime of robbery while armed with a dangerous weapon. They were tried by a jury, found guilty and sentenced to the penitentiary. By this writ of error they seek to reverse the judgment.

The robbery occurred on the morning of June 11, 1935, at 5157 Washington boulevard, Chicago. Two diamond rings, a wedding ring and a ten dollar bill were taken from Mrs. Rae Hoover by two men, under the following circumstances: Mrs. Hoover answered the door bell of her apart-

ment at about 10:35 o'clock and two men were at the door. One held a revolver in his hand and stated that the purpose of their call was robbery. Upon entering the apartment the two men went to a bed-room and the man who was not armed took the rings and money from a dresser. Mrs. Hoover and the man who was armed went to the living-room where they remained about twenty minutes while the first mentioned robber continued a search through the house. Mrs. Hoover was directed by one of the robbers to hold her dog which had been making a noise.

At about eleven o'clock two other men came to the apartment, rang the bell and one of them announced that he was from the Metropolitan Insurance Company. Mrs. Hoover had been expecting him. When the insurance men were admitted one of the robbers told them that it was a "stick-up," and one searched their pockets and took their money and a watch. The insurance men were tied with electric light cord fastened to their feet and wrists and ordered to lie on the floor. Mrs. Hoover's right hand was tied to the foot of one of these men and she continued to hold the dog with her left hand. The front door of the apartment remained closed and the two men committing the robbery left from the rear. About five minutes after their departure Mrs. Hoover succeeded in freeing herself and the insurance men. Each of these three persons positively identified the defendants as the robbers.

Each defendant testified that he was elsewhere at the time of the robbery and in support of the defense of alibi two witnesses testified to seeing DiForti at his home and other places at such times as would make it impossible for him to have been at the place of the crime at the time it is alleged to have been committed, and one witness testified to the presence of Pecho at the home of his mother-in-law, some distance from the place of the crime, engaged in painting the rooms of a house. Other witnesses testified partially corroborating the defense of alibi of the defendants.

The contentions are that the arrest was illegal; that the identifications at the detective bureau were improperly made; that the defense of alibi required consideration by the jury and that the evidence was insufficient upon which to base the conviction. The ground of the first contention is that the defendants were arrested three days after the crime was committed without a warrant. Thomas Fallon, a police officer who was present at the time of the arrest of the defendants, testified that Sergeant Hanrahan, who, at the time of the trial, was in New York, knew the defendants, made them pull alongside the curb and then sent them to the detective bureau for investigation. It does not appear that there was no warrant for the arrest of the defendants, nor that the police officers did not have reasonable ground for believing that the two defendants were implicated in a crime. Fallon's testimony does not raise a justifiable inference that there was no warrant for the arrest of the defendants or that there was not reasonable ground for believing that they were implicated in a crime. To justify an arrest without a warrant the ground for belief that the person to be arrested is guilty of a crime must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*People* v. *Humphreys,* 353 Ill. 340; *People* v. *McGurn,* 341 id. 632; *People* v. *Scalisi,* 324 id. 131.) But a police officer has the right to arrest without a warrant where he has reasonable ground for believing that the person to be arrested is implicated in a crime. (*People* v. *Humphreys, supra; People* v. *McGurn, supra; People* v. *Scalisi, supra; People* v. *Swift,* 319 Ill. 359.) No objection appears to have been made in the trial court that the arrest was illegal and that objection cannot be considered here for the first time. (*People* v. *Wright,* 324 Ill. 29.) One who seeks to reverse a judgment of conviction has the burden of showing that the proceedings of the trial court were illegal, as every reasonable intendment, not negatived by the record, will be indulged in

support of the judgment. (*People* v. *Gerke,* 332 Ill. 583.) The errors relied upon for a reversal must clearly appear in the abstract. *People* v. *Stevens,* 335 Ill. 415; *People* v. *Heywood,* 321 id. 380.

It is next contended that the identification of the defendants was unsatisfactory; that the method of conducting the show-up at the detective bureau was not conducive to an accurate identification. The defendants testified that they were not identified when they were brought into the presence of the three persons upon whose testimony the identification rests, and that one of the defendants was only identified when the hat of the other defendant was placed on his head. On behalf of the prosecution DiForti was described as wearing a brown suit, white shirt but that he had no hat. Pecho was described as wearing light trousers, a brown suede jacket and a light felt hat which came far down over his forehead but did not quite rest on his ears. At the detective bureau Pecho wore light trousers, a shirt and no jacket. Mrs. Hoover testified positively that, subsequent to the robbery, the next time she saw the defendants was at the show-up on June 16, at 2:30 o'clock in the afternoon; that there were eleven men in the line, and that the defendants were toward the center of it. She stated, "I didn't pick them out at that moment; I waited until they passed on. There was a new line formed in the squad room. They were the first two on the end of the first line that came out. I was alone with the detective, who questioned me. I picked out these first two. They were together in that second line when they lined up. They were together the first time they were lined up. I was absolutely positive they were the men the first time I looked at them. I could remember the faces. I knew them when I saw them. I saw them in the apartment long enough to identify them." She also testified that DiForti had on the same gray hat at the detective bureau which Pecho wore at the time of the robbery; that it fit DiForti but was too

large for Pecho. Pecho was bareheaded at the show-up and she asked to have him put on DiForti's hat and when he did so it fitted down over his face the same way it did at the time of the robbery.

The testimony of James Kubat, one of the insurance men, upon the identification was equally positive. He stated that he saw the defendants on Sunday evening, June 16, at 6:00 o'clock in a line in which there were four men. Pecho was made to put on a hat, which was the one he saw on that defendant at the time of the robbery. By the color and the way it fitted he testified he knew it was the same hat and he identified the defendant Pecho. The witness said that he looked at him four and a half or five minutes before he was required to put on the hat, but that he identified him both before and after the hat was placed on his head. Louis Wepprin, the other eye witness, was sick on Sunday, June 16, but he saw the defendants the next day in the felony court and recognized them.

The identification of the defendants is not shown to have been impaired by the method of having them lined up with other persons at the detective bureau. The hat was a part of the clothing worn by one of the robbers and to supply an additional identifying element it was placed on the head of one of the defendants at the request of the person robbed. It does not appear why such action would be improper. There was some conflict between the testimony of the defendants' witnesses and those for the prosecution upon the question of identification, but the question was one for the jury to determine. (*People* v. *Auriene*, 361 Ill. 440; *People* v. *Deal*, 361 id. 225.) The circumstances under which the identification was made were before the jury and at most would affect only the credibility of the witnesses. (*People* v. *Gasior*, 359 Ill. 517; *People* v. *De-Suno*, 354 id. 387; *People* v. *Reilly*, 348 id. 153.) In view of the positive identification by three witnesses, the circumstances under which the show-up was conducted are

not such as to require a reversal of the judgment on that account. *People* v. *Boucher,* 303 Ill. 375.

It is contended that the testimony of the defendants and their witnesses that the defendants were at other places than that of the crime was not inherently improbable but was of such a nature as to require consideration of the jury and be given credence. Margaret Mack and Tony Bugliesi each testified to being at the home where DiForti resided with his mother, the former from before 9:00 o'clock in the morning, remaining an hour and a half, and the latter having stayed with DiForti the previous night. Each of these witnesses testified to riding in an automobile with the defendant DiForti on the morning of June 11, 1935, first to Mrs. Mack's home and then to Bugliesi's home. Bugliesi testified that the reason he remembered the date was that he still retained street car transfers of that date. The defendant DiForti's testimony was the same as Mrs. Mack's and Bugliesi's testimony, and he further testified that from Bugliesi's home he took a suit to a tailor shop at 221 West Thirty-first street and from there went to a barber shop, and had his hair cut and was shaved and remained about an hour and a half. He produced a ticket or receipt which he said the tailor issued to him upon the delivery of the clothes. The tailor testified that the receipt was such as he issued and bore his signature and from the number and a comparison with his books it indicated that it was not brought in early on the date the crime was committed but no time is shown on the receipt. The barber corroborated the defendant DiForti as to his presence in the barber shop at about 11:00 o'clock.

The defendant Pecho was corroborated in his testimony that he was engaged in painting rooms in a house occupied by his mother-in-law on June 11, by a witness named Herbert Lane who was papering rooms at the same place at the same time, and said that the defendant Pecho was not absent for any length of time during working hours on that date. The

defendant testified that the only time he was absent on that date was a short time in the afternoon when he went across the street to his own home to obtain oil for his paint. A witness, Ernest Hoegner, testified that he visited the home of Mrs. Paladino, the defendant Pecho's mother-in-law, at about noon time and at that time the defendant Pecho was on a step-ladder, dressed in old clothes. He determined the time of his call from certain of his records.

If the evidence respecting alibi, together with all other evidence in the case, raises a reasonable doubt of a defendant's guilt he is entitled to an acquittal. (*People* v. *Ryan,* 349 Ill. 637; *People* v. *Gold,* 361 id. 23.) On the whole case the defendant's guilt must be proved beyond a reasonable doubt, (*People* v. *Wisz,* 360 Ill. 126,) but alibi is an affirmative defense, and where the *corpus delicti* is proved, together with evidence tending to show the guilt of the defendants, and the defense of alibi is interposed the burden of establishing the alibi is upon the defendants. (*People* v. *Wisz, supra.*) There is nothing to show that the jury did not give the testimony for the defendants full consideration, but notwithstanding that fact believed the testimony for the People was sufficient to justify a conviction.

What has been said upon the question of identification and alibi is pertinent upon the argument that the evidence was insufficient upon which to base the conviction. Where a case depends merely upon the credibility of witnesses on one side testifying to an alibi and on the other as to identification of the defendant, or defendants, a court of review will not disturb a verdict of guilty. (*People* v. *Kandian,* 360 Ill. 217; *People* v. *Abelsky,* 359 id. 387; *People* v. *Manfucci,* id. 69; *People* v. *Kelley,* 330 id. 562.) This court will not substitute its judgment for that of the jury in a case of merely conflicting testimony. *People* v. *Papke,* 325 Ill. 410; *People* v. *Boucher, supra.*

There is no reversible error in the record and the judgment of the criminal court is affirmed.

*Judgment affirmed.*